STRAYHORN VS. GILES.

Where there is no motion for a new trial, the finding of the court, sitting as a jury, upon the facts, is not the subject of review in this court.

Fraud avoids a contract *ab initio*, both at law and in equity, whether committed by the party himself or his authorized agent.

The sale of a free negro with warranty that he is a slave, made by an agent for his principal, both being aware of the claim to freedom, is a fraud on the part of both; and another negro being part of the consideration, the purchaser may treat the contract as void, and bring trover against the principal and agent, or either of them, for such negro, without demand first made.

The judgment of liberation, on the petition of a free negro sold as a slave, is admissible in evidence, on the part of the purchaser, in a suit to recover back the consideration paid for him.

## Appeal from Yell Circuit Court.

Hon. JOHN J. CLENDENIN, Circuit Judge.

WILLIAMS & MARTIN, for the appellant.

An agent who discloses the name of his principal, acts under and within the scope of his authority, is not personally responsible unless he makes himself so, either by fraud or contract.

As to the liability of an agent to third person on contract, see *Story on Agency, sec.* 261, *et seq.* It is a fixed principle of law, that when an agent acts within the scope of his authority, as Strayhorn clearly did in this case, and discloses the name of his principal, and is guilty of no tort, or deceit in executing his contract, there is no personal responsibility to third persons. *Story on Agency, secs.* 263, 308; 2 *Stark.* 46; 15 *John. Rep.* 1; 13 *Ib.* 58; 6 *Binn.* 234; 2 *Kent's Com.* 492; *Story on Sales, sec.* 76.

Conceding that Strayhorn would be liable in case of fraud upon his part, we insist that Giles could not have maintained

trover in the face of his contract against him without demand and refusal, *Starkie's Ev.*, 1160, 1162, and notice of Giles' claim before Strayhorn delivered the girl to Houser, for otherwise Strayhorn's delivery to his principal is not a conversion, 3 *Starkies Ev.* 1159; a demand and refusal are necessary where there is no actual conversion, if the possession in the first instance was lawful. *Bates vs. Coughing*, 10 *Wendell* 589; *Everett vs. Ceffin*, 6 *Wendell* 603.

The judgment in case of *Beames vs. Houser*, was admissible to prove that such a judgment was rendered merely, and to prove the consequences of that judgment, to-wit· the loss of possession and title to the slave by Giles. But was not admissible as against Strayhorn, who was neither party nor privy to the proceeding, to prove any fact upon whose supposed existence the judgment is founded, to-wit: The right of the negro to freedom, his evidence of emancipation, his identity, etc. 1 *Starkie's Ev.*, 252, 253.

GARLAND & RANDOLPH, for appellee.

The instrument by which an authority is conferred is competent in all cases to establish that authority. And where one, as agent for another, executes a bill of sale for a negro, reciting the price paid, containing a warranty of title, soundness, etc., such bill of sale is evidence of the facts stated in it in an action against such agent. 1 *Greenl. Ev.*, secs. 171, 172, 179, 82, 84; *Hard vs. Yunt*, 1 *Watts* 253; *Sebell vs. Don* 9 *Wheat.* 558.

If one sell property to another, no matter in what capacity, and make false representations in regard to such property, or fraudulently conceals facts, whereby the other is induced to make the purchase, he is bound to respond in damages for the amount of the injury sustained—and this is so whether he entertained a fraudulent intent or not. See *Smith vs. Richards*, 13 *Peters U. S. S. C. R.* 26; *Hazard vs. Irwin*, 18 *Pick.* 95; *Walter vs. Polhill*, 3 *Barnwall & Adolphus* 114; *Chitty on Contracts* 682, *et seq.*

The judgment in a suit for freedom by one claimed as a slave

is evidence against the parties to the suit, and all claiming title to the slave or negro under or through them. *Sec.* 13, *chap.* 75, *Gould's Dig.*

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

In the month of August or September, 1854, Wm. Houser, of Van Buren, obtained possession of a mulatto boy named *Bill*, in the Indian country; and about the 16th of September, of the same year, placed him in possession of Samuel Strayhorn, of Dardanelle, and executed to him, on that day, a power of attorney, authorizing him to sell the boy, "*for any price whatever*," and to make a bill of sale, etc., to the purchaser, etc. On the 6th of November, 1854, Strayhorn sold *Bill* to Josiah M. Giles, of the vicinity of Little Rock, for $1,000, taking a negro girl in part payment, and, in the name of Houser, executed a bill of sale to Giles, warranting *Bill* to be a slave for life, etc.

In the meantime *Bill* had commenced suit for his freedom against Houser, in the Crawford Circuit Court, which was pending when Strayhorn sold him to Giles; and afterwards, on the 15th day of August, 1856, he obtained a judgment of liberation.

On the 6th of February, 1858, Giles commenced this suit, in the Yell Circuit Court, against Strayhorn. The declaration contained three counts, the *first* and *second* in *case*, alleging that Strayhorn made false and fraudulent representations to Giles in regard to Houser's title to Bill; and the *third* in *trover* for the negro girl which Giles let Strayhorn have in part payment for *Bill*.

Upon the issues made up by the parties, and submitted to the court sitting as a jury, the court found in favor of Giles on the *trover* count, and assessed his damages at $700.

To the count in trover, Strayhorn pleaded not guilty and limitation. On the trial, the court declared the law applicable to the case to be contained in six propositions submitted on behalf of Giles. Fifteen propositions were also submitted on

the part of Strayhorn, the 10th and 13th of which the court declared to be law, and refused the others.

Strayhorn, without moving for a new trial, took a bill of exceptions and appealed.

Shortly after Strayhorn received the negro girl of Giles in part payment for Bill, he delivered her to Houser, who converted her to his own use. No demand was made upon Strayhorn, by Giles, for the girl before the action was commenced.

The court below must have found, from the evidence, that Strayhorn was guilty of fraud in the sale of the boy *Bill* to Giles, because, being the agent of Houser, and making the sale, and executing the bill of sale in his name, and having, before suit, turned over the girl, which he received of Giles, to Houser, he would not have been liable to Giles, in trover, for the value of the girl, if he had acted with fairness and without fraud in making the sale, etc. And there was evidence in the case on which the court could have so found. In September, 1854, after Bill was placed in the possession of Strayhorn, and before he sold him to Giles, Mr. Walker, of Van Buren, one of *Bill's* attorneys, wrote to Mr. Green, who was then attending the Yell Circuit Court, that Bill was free, and was in the possession of Strayhorn, and requesting him (Green) to bring suit for his freedom. Whereupon, Mr. Green addressed a letter to Strayhorn, informing him that Bill was reputed to be free, requesting him to bring Bill to court that he might institute suit for his freedom; and proposing that Strayhorn might keep possession of Bill until the suit was determined. After Strayhorn had received this letter (with the request of which it seems he did not comply), he took Bill to Little Rock, and sold him to Giles, executing a bill of sale, in the name of Houser, warranting him to be a slave for life, etc. Before he sold him, he told a witness that he would not warrant the title. There was also some evidence from which it might have been inferred by the court that he had been informed, before the sale, that suit for Bill's freedom had been instituted. It does not appear that he communicated to Giles the information which he was

in possession of in relation to Bill's suit for, or reputed, freedom.

It is true that a witness stated that he had heard a rumor that Bill was free, and was under the impression that he informed Giles of the rumor before he purchased him; but the court concluded, perhaps, that Giles was lulled into security and induced to make the purchase, notwithstanding he may have been informed of such rumor, by Strayhorn offering to sell, in the name of his principal, with warranty of title.

It was certainly the duty of Strayhorn to have dealt fairly and frankly with Giles, and to have advised him that he had been informed that Bill was reputed to be free, and had commenced suit against Houser for his freedom. Had he dealt thus fairly with Giles, there would have been no ground to impute fraud to him in the sale, and he would have incurred no personal liability in the transaction. If Giles, after being so informed of Bill's claim of freedom, had thought proper to purchase him upon the faith of the warranty contained in the bill of sale, his remedy would have been against Houser on the warranty, and he could not have treated the contract as void for fraud, and maintained trover for the girl against the principal, or the agent. 1 *Story on Contracts, sec.* 496; 2 *Parsons on Contracts, p.* 270; *Story on Agency, sec.* 300; *Campbell vs. Hillman,* 15 *B. Monroe* 515.

But whether the court was warranted in finding from the evidence that Strayhorn was guilty of fraud in the sale to Giles or not, is a question which is not properly presented, by the record, for determination by us. There being no motion for a new trial, the finding of the court, sitting as a jury, upon the facts, is not the subject of review by this court, as has been repeatedly held.

Fraud avoids a contract, *ab initio,* both at law and in equity, whether such fraud were committed by one of the contracting parties upon the other; or by both upon persons not parties thereto, for the law will not sanction dishonest views and practices, by enabling an individual to acquire any right or interest

by means thereof. *Chitty on Contracts*, 589. And the fraud of an authorized agent avoids a contract made by him for his principal. *Ib.* 590; *Story on Contracts, sec.* 496.

The sale of a free negro to Giles, with warranty that he was a slave, was a fraud on the part of Houser, in whose name, and by whose authority, the sale was made; and it must be assumed, upon the finding of the court below, as above shown, that Strayhorn participated in the fraud.

The negro girl having been obtained from Giles by means of a fraudulent contract, in which Houser and Strayhorn participated, he had the right to treat the contract as void, and to bring trover for the value of the girl against both or either of them—the one having received the girl under the contract, and delivered her to the other. *Campbell vs. Hillman*, 15 *B. Mon.* 514; *Johnson vs. Barber*, 5 *Gilman* 430; *Story on Agency* 310; *Story on Sales, secs.* 158, 420; *Buffington et al. vs. Gerrish et al.*, 15 *Mass.* 157.

The obtaining of the girl from Giles by means of a fraudulent contract, was equivalent to a tortious taking, and no demand was necessary before suit. *Thurston vs. Blanchard*, 22 *Pick.* 18; 1 *Dana* 110.

In *Thurston vs. Blanchard*, 22 *Pick.* 20, the court said: "We are now to take it as proved in point of fact, to the satisfaction of the jury, that the goods, for which this action of trover is brought, were obtained from the plaintiffs by a sale, but that this sale was influenced and effected by false and fraudulent representations of the defendant. Such being the case, we think the plaintiffs were entitled to maintain their action, without a previous demand. Such demand, and a refusal to deliver, are evidence of conversion, when the possession of the defendant is not tortious; but when the goods have been tortiously obtained, the fact is sufficient evidence of conversion. Such a sale, obtained under false and fraudulent representations, may be avoided by the vendor, and he may insist that no title passed to the vendee, or any person taking under him other than a *bona fide* purchaser for value and without notice, and in such

case the. seller may maintain replevin or trover for the goods."

The 1st, 3d, 4th, 5th and 6th propositions submitted on behalf of Giles, and declared by the court below to be applicable to the case, are substantially in harmony with the principles above stated.

So was the 10th proposition submitted on the part of the appellant, and approved by the court, in which it was declared, in effect, that he was not liable in the action unless he was guilty of fraud, or a tortious taking of the negro girl, etc.

So the 1st and 5th propositions submitted for appellant, and refused by the court, are believed to be correct, but they are substantially the same as the *first* proposed by appellee, and the *tenth* submitted by the appellant, which were approved by the court; and it was not necessary for the court to encumber the case by repeating and multiplying propositions, differing only in phraseology and not in principle. The practice of unnecessarily multiplying instructions is not to be encouraged.

The transcript of the judgment of liberation, obtained by Bill, against Houser, in the Crawford Circuit Court, which was admitted in evidence, against the objection of appellant, was competent to prove that Bill was free at the time he was sold to the appellee, the suit having been instituted before the sale. *Dig., chap.* 75, *sec.* 13. Being the judgment of a court of competent jurisdiction, establishing the *status* of Bill, it was admissible on principle. 1 *Greenlf. Ev., sec.* 544.

The court below did not err in declaring the second proposition submitted by appellee, in relation to the competency of the judgment of liberation, to be law; nor in refusing the contrary propositions submitted for appellant on the same subject. The identity of the negro was sufficiently established by the testimony in the case.

The counsel for appellant insist that the damages assessed by the court, sitting as a jury, were excessive. This may be so, but there having been no motion to set aside the verdict, the question is not before us.

524    CASES IN THE SUPREME COURT

Believing that the court did not err, to the prejudice of the appellant, in declaring the law applicable to the facts of the case, the judgment must be affirmed.