TAYLOR, RADFORD & Co. vs. HATHAWAY.

1. JUDGMENT: *When the verdict fails to fix the amount of the recovery.*
   Where, in a suit on an open account, the jury find a verdict generally for the plaintiff, without ascertaintng the sum due, it is error to render a judgment thereon for the sum demanded.

2. LIENS: *Of laborer for the erection of buildings.*
   Section 4092 of Gantt's Dig., construed in connection with other sections of the chapter, impliedly gives laborers a limited lien on land for buildings erected thereon under contract.

3. — *Of laborer for clearing and cultivating land.*
   A laborer who cultivates land, or clears and prepares the same for cultivation, is not entitled to a lien thereon for his wages.

APPEAL from *St. Francis* Circuit Court.
Hon. JOHN W. FOX, Circuit Judge.
*B. C. Brown,* for appellant.
*Howes, contra.*

ENGLISH, C. J. On the 2d of April, 1872, Hathaway filed before a justice of the peace of St. Francis county, the following complaint: "E. Hathaway, plaintiff, v. statement of laborers' lien, Wiley J. Cook, W. S. Taylor, W. L. Radford, and W. E. McGuire, defendants. The plaintiff, E. Hathaway, states that the defendant, Wiley J. Cook, is justly indebted to him, after all credits to which he is entitled are given him, in the sum of $450 for work and labor done and performed by said plaintiff for said defendant, in, about, and upon the farm now occupied by said Cook, near Forest city, county of St. Francis, etc., and known as the N. E. 1-4 of the S. W. 1-4 of sec. 34, T. 5. N., R. 3 E., in opening, preparing for cultivation and cultivating said farm, and in erecting improvements thereon, and that said plaintiff has a lien upon said farm for

the sum so due, and that said sum accrued within eight months past.

"Plaintiff further states that he is informed and believes, that while said lien was in full force, said defendant, W. J. Cook, sold said land to the defendants, Taylor, Radford, and McGuire, but that they never had actual possession of the property." Prayer for judgment against Cook for $450, that the same be declared to be a lien upon said farm, and that upon his failure to pay the same, said lands be ordered sold to satisfy the judgment, etc. The justice issued an attachment against the land, with a summons clause for all of the defendants.

The constable returned upon the writ that he had taken possession of the land, and served Cook and Radford, but could not find Taylor and McGuire.

On the return day, April 11, 1872, the justice made the following entry:

"Having waited three hours for the defendant, W. J. Cook, he came not, but made default. This cause is continued as to the other defendants to the 11th day of May, 1872."

On the 11th of May, Taylor, Radford and McGuire appeared, both parties announced themselves ready for trial, the cause was submitted to a jury who, after hearing the evidence, returned the following verdict: "We, the jury, find for the plaintiff."

On this verdict the justice entered judgment as follows:

"It is therefore adjudged by the court that the plaintiff recover of the defendants $450 for his debt, and all the cost expended by him in this suit."

The defendants appealed to the circuit court of St. Francis county, where the cause was finally tried by a jury in February, 1874, and the following verdict rendered: "We, the jury find for the plaintiff," upon which the court rendered the following judgment:]

"It is therefore ordered and adjudged by the court that the judgment for $450 heretofore obtained in this cause by plaintiff against Wiley J. Cook, before Thomas W. Yerzley, justice of the peace, be and is hereby declared to be a lien upon the land described in plaintiff's statement of laborers' lien, and that the same be sold for said debt and costs, etc., for which execution may issue."

Taylor, Radford & Co., filed motions for a new trial, and in arrest of judgment, which were overruled, and they took a bill of exceptions and appealed to this court.

1. The claim of Hathaway against Cook was an open account for labor, and the amount not ascertained by any written contract. On the appearance day, the magistrate entered a default against Cook, but did not proceed to ascertain the amount due from him to Hathaway.

On the trial day, the jury simply found a verdict for plaintiff, ascertaining no sum. Upon such a verdict, it was an error to render judgment against Cook for $450, and of course it was an error to include Taylor, Radford & Co. in this judgment. They were merely claimants of the land, and were not charged in the complaint as being jointly liable with Cook to Hathaway.

But on the appeal to the circuit court, the judgment was opened and the cause stood for trial, *de novo*. On the final trial, the jury found simply for the plaintiff, as did the magistrate's jury, and the court rendered judgment condemning the lands to be sold to satisfy the magistrate's judgment against Cook for $450, which had not only been erroneously rendered, but had been opened by the appeal.

The court should have arrested the judgment on this verdict, and ordered a new trial.

2. On the trial the appellants asked the court to give the following instructions, with others, to the jury, which were refused:

" 2. If the proof discloses the fact that plaintiff worked with Cook as a common 'laborer, then he could only enforce his lien on the products of labor, and in no court would he have a right to resort to the land.

" 3. That a lien only lies against the land for ditching and building levees, and this only when the party works under a special contract for that purpose with the owner of the land.

" 5. Unless the jury find that the land sought to be charged was cleared by, and was the product of plaintiff's labor, they must find for defendant.

" 6. That under the law of this state, no lien exists upon land for clearing, improving, cultivating, building fences thereon, or for such like labor performed thereon."

The evidence introduced on the trial conduced to prove that Hathaway labored for Cook on the land in question from May 1869 to March, 1870, and was paid for his work. That he continued to labor on the place without any contract as to the amount of wages to be paid him, from the 1st of March, 1870, to the 22d of October, 1871 (with the exception of July, August and September of the latter year), when he quit.

That after he left, he and Cook had a settlement, and it was agreed that Cook was indebted to him for his services $450. He seems to have been employed with other hands in deadening, clearing, fencing, hauling, plowing, building stables, etc., but just how long he labored at any particular kind of work, or its value, does not appear. On their settlement, he and Cook seem to have lumped the whole at $450, making some estimate of the number of months he worked, and the value of his services per month.

Cook conveyed the land to appellants by deed bearing date March 4, and recorded November 4, 1871.

The laborers' lien act of July 23, 1868 (Gantt's Dig., p. 740), under which an attempt was made to assert a lien on land in

this case, was before this court, in *Dano v. M. O. & R. R. R. Co.*, 27 Ark., 564, and was partly construed.

The court held that the word "laborer," as used in the act, must be understood in its ordinary sense, and as distinguished from mechanic or artisan, as used in other lien acts.

That though the act is remedial, yet providing for a summary remedy, contrary to the course of the common law, it. must be strictly construed, and a laborer seeking to establish a. lien under it must bring himself strictly within its provisions.

That the first nine sections of the act have reference solely to moveable property, the products of labor.

That the tenth section (sec. 4087, Gantt's Dig.) impliedly gives laborers a lien upon land reclaimed by ditching or building levees, but that a railroad bed is not embraced by the language employed in this section or other provisions of the act.

The first section of the act is the only one that expressly gives a laborer a lien, and that gives it upon the production of his labor. Looking at this section alone, the laborer could in no case have a lien upon land for work done upon it, for the land, however much improved by his toil, could in no proper sense of the word be considered the "production" of his work or labor.

But looking at the whole act and endeavouring to give each of its provisions some effect, the court no doubt properly held that the 10th section contemplated a lien upon land for ditching or building a levee under contract with the owner.

So we think the 15th section (sec. 4092, Gantt's Dig.), taken in connection with expressions used in other sections, impliedly gives to laborers a limited lien upon land for buildings erected on it by them under contract, etc. It provides that : "In selling buildings under the provisions of this act, a.

reasonable amount of land will be sold with them, not to exceed two acres, surrounding the building."

Part of the claim of appellee, as stated in his complaint, was for "erecting improvements" on the land.

The character of the improvements is not indicated otherwise than by the word "erecting."

The evidence shows that he labored some in building stables and, perhaps, other farm houses on the land; but how much, and what was the value of such labor, neither the complaint nor the evidence shows.

If he had a lien for his labor upon any building, it was certainly not proven to be worth $450, nor to extend over the whole tract, yet the court condemned the entire tract of forty acres to satisfy his entire claim for labor.

Part of his claim was for "cultivating said farm," and the evidence shows that he plowed some. If he produced by his labor, corn, wheat, cotton, or other crops, he may have had a lien, under the statute, upon such products of his labor for his wages, but not upon the land.

The remainder of his claim was for labor in "opening and preparing for cultivation" said farm.

There was evidence that he was employed a portion of the time he worked for Cook, in deadening, clearing and fencing, but it would require a much more liberal construction of the act than we are warranted in giving it under the decision of this court above referred to, to hold that any of its provisions give the laborer a lien upon the land for such services. It might be just and wise for the legislature to give the laborer a lien for his wages on any one or more acres of land that he might clear, inclose and prepare for cultivation, under contract with the owner.

But be that as it may, it is the province of the courts to construe and administer the statutes as they find them, not to legislate.

Other instructions were moved by the appellants and refused by the court below; but it is not deemed material to notice them.  Such as are copied above were, in substance, correct, and should have been given to the jury.

The judgment of the court below must be reversed, and the cause remanded with instructions to award a new trial, etc.