HERMAN BISBEE *vs.* LOUIS E. TORINUS and others.

September 12, 1879.

**Promissory Note—Partial Failure of Consideration.**—Where the maker of a promissory note, as a defence to the same, relies upon a partial failure of its consideration, the burden is upon him to show to what extent, *i. e.* to what value, consideration has failed.

**Same—Proof of Failure held Insufficient.**—In this case, the court assumes, for the benefit of the defendant, that the consideration of the note upon which this action is brought is apportionable, and that a partial failure of the consideration of a promissory note is available as a defence in this state. Upon this assumption, it is *held*, upon consideration of the case, that the defendants have failed to make it appear to what extent the consideration of the note in suit has failed, in proportion to the whole consideration; and the finding of the referee that the plaintiff is entitled to recover the full face of the note is accordingly sustained.

Appeal by defendants from a judgment of the district court for Washington county, entered upon the report of a referee.

*Wm. M. McCluer*, for appellants.

*Batchelder & Buckham*, for respondent.

BERRY, J. This is an action upon a promissory note for $3,452.08, executed to plaintiff by defendants. So far as important for the purposes of this opinion, the facts out of which the note arose are as follows:

On October 2, 1871, Butler Comstock represented to defendants that he and plaintiff were owners of certain large tracts of pine lands in Wisconsin. Defendants relying upon this representation, a written contract was, on that day, entered into by and between them of the second part, and plaintiff of the first part, whereby the latter, for a considera-

tion mentioned, granted to the former the "right, privilege and permission" to enter upon the lands aforesaid, and cut, during the logging season commencing in 1871 and 1872, "all the pine timber fit for saw-logs, standing, growing or being" thereon. Under this contract defendants entered upon the lands during the logging season of 1871–2, and cut and removed therefrom 1,805,834 feet, and paid the parties of the first part and their assigns for 3,000,000 feet, as by the terms of the contract required, at the price specified therein. During the logging season of 1872–3, defendants cut and removed from said lands 2,198,162 feet. On July 11, 1873, the plaintiff, together with the administrator and assigns of Comstock, as parties of the first part, and the defendants as parties of the second part, entered into a contract supplemental to that of October 2d. In this supplemental contract it was estimated and agreed that, at the time of entering into the same, there remained standing upon the land 2,575,000 feet of pine timber. Thereupon defendants gave the parties of the first part in the supplemental contract their notes for the amount due for the logs cut on the lands in the logging season of 1872–3, and it was then and there agreed that, after deducting from the amount of timber estimated to be standing upon the lands, to wit, 2,275,000 feet, the amount that had been paid for, that was not in fact cut during the season of 1871–2, to wit, 1,194.166 feet, the defendants should give their note for the balance, being 1,380,834 feet, at the contract price of $2.50 per thousand, which note should be made payable to plaintiff on August 1, 1874. In accordance with this agreement the note in suit was executed. So far as defendants were concerned, this note was given for the interest of all parties of the first part to the supplemental contract in the timber remaining standing, and was made payable to plaintiff by their arrangement. The supplemental contract, after acknowledging payment in full by the defendants for all the pine timber theretofore cut on and removed from said lands, or then remaining thereon, stipulates and agrees that

the defendants may, at any time within five years from the date of such contract, (July 11, 1873,) enter upon said lands, or any part of them, and cut and remove therefrom all the pine timber remaining thereon. The note in suit was a part of the payment referred to.

It appears that at the date of the execution of the first contract, (October 2, 1871,) the plaintiff and Butler Comstock were the owners in fee of all the lands described therein, except certain school lands, and a forty-acre tract in section 20. At the time of the execution of the supplemental contract and of the note in suit, the forty-acre tract was owned in fee by defendants, and the parties of the first part to said contract had no interest therein or in the timber thereon, and such transfer did not enter into the estimate of standing timber made by the parties at the time of making the supplemental contract. The school-section lands were held by plaintiff and Butler Comstock, under certificates of sale issued to them by the state of Wisconsin, under the laws of that state regulating the sale of school and university lands, and only a part of the purchase-money of the same had been paid, and no patent has been issued for any part thereof. By the laws of Wisconsin, it is provided that "the title or fee" of all school and university lands shall remain in the state until patents shall issue therefor, and that no certificate of sale shall be deemed to confer upon the purchaser of such lands, or any person claiming under him, the right to cut down, destroy or carry off from the same any wood or timber standing or growing thereon, without the consent of the commissioners. With the exception of an eighty-acre tract, all the other lands mentioned in the original and supplemental contracts—the same being situate in Douglas county, Wisconsin—had been sold to said county for delinquent taxes, as follows: A part was sold on September 5, 1871, and certificates of sale bearing that date were issued to Douglas county. These certificates were, on January 13, 1874, assigned to one Chalmers. On December 8, 1874, no redemption of said

part having taken place, a tax deed thereof was duly executed and delivered to Chalmers, who then became the owner thereof and of the timber thereon. The remainder of said other lands were sold on September 3, 1872, and certificates of sale bearing that date were issued to Douglas county. These certificates were, on January 13, 1874, assigned to said Chalmers. On May 10, 1876, no redemption of said remainder of lands having been made, a tax deed thereof was duly executed and delivered to said Chalmers, who then became owner thereof and of the timber thereon. Under the laws of Wisconsin, the owner or occupant of any lands sold for taxes may redeem the same at any time within three years from the date of the certificate of sale. The laws of Wisconsin also provide "that whenever any land shall have been sold for the non-payment of taxes thereon, and shall have been bid in by the county as provided by law, and the taxes for which the same were sold remain due and unpaid, and the county remains the owner and holder of the certificate or certificates of sale, it shall be unlawful for any person or persons whomsoever to cut or remove any logs or timber from such land as aforesaid; and if any person or persons shall cut or remove any logs or timber from such land as aforesaid, it is made the duty of the county treasurer of the county in which such land is situated to issue a warrant under his hand and seal to the sheriff of his county, stating the description or descriptions of such land, and the amount of taxes thereon for one or more years, commanding such sheriff forthwith to seize such timber and logs, (if to be found in his county,) and sell the same, or a sufficient amount thereof to satisfy said taxes."

It appears that the amount of pine timber on the eighty-acre tract before mentioned (the title of which remained in the plaintiff and Butler Comstock, or his heirs or assigns,) was, according to the estimate made by the parties to the supplemental contract, at the time of the execution thereof, 400,000 feet, of the value of $1,000, at the price at which the sale was made. It further appears that at the time of the

execution of the supplemental contract, the parties thereto knew that there were taxes which had not been paid, and which were claimed to be due, upon all the lands described in said contract, except the school lands.

The referee by whom this case was tried below finds three conclusions of law, which are in substance as follows: *First,* that the plaintiff and "his associates," at the time of making the supplemental contract, had a good title to the eighty-acre tract, and a right to sell the timber thereon; *second,* that there was a valid consideration for the note in suit, to the extent of $1,000; *third,* that plaintiff is entitled to judgment for the full amount of the principal and interest of said note. Judgment was entered accordingly, and the defendants appeal. It is to be inferred (and there appears to be no dispute as to the fact) that the referee found that there was a valid consideration for the note to the extent of $1,000, upon the basis that, according to the estimate of the parties, that was the value of the timber upon the eighty-acre tract, being the only parcel of the lands to which the plaintiff and those interested with him had a perfect title. Upon what ground the referee concluded that the plaintiff was entitled to recover the entire principal and interest of the note, does not appear. We are of opinion that this conclusion was correct, upon the grounds following: Granting that the consideration of the note is apportionable, and assuming that a partial failure of the consideration of a promissory note is available as a defence in this state, if it appeared that the whole of the consideration had failed, except that part of it which consisted in the right to cut and remove the timber upon the eighty-acre tract, and that such part was, proportionably to the whole consideration, of the value of $1,000 only, it would have been proper for the referee to have found that the plaintiff was entitled to recover, on the note in suit, $1,000 and interest only.

It is contended, on behalf of the plaintiff, that this would not be so, because a partial failure of the consideration of a note cannot be set up as a defence; but as it is not necessary

to determine the correctness of this position in this case, we have given the defendants the benefit of the assumption that it is incorrect.

But it does not appear that the right to cut and remove the timber from the eighty-acre tract—the value of which, as estimated by the parties, is found to be $1,000—was the only part of the consideration of the note which had not failed. As to the school land, the defendants acquired the right to cut and remove the timber thereon, in whole or in part, provided the commissioners would consent. It is not found that such consent was refused; in fact, it is not found that it was not given, and advantage taken of it by defendants. The privilege of cutting and removing timber, with the consent of the commissioners, was a part of the consideration of the note, and presumably valuable.

With regard to the lands sold for taxes to Douglas county, it is to be observed that until a tax title is acquired through the execution of a deed, it is only, so far as appears, while the county remains the owner and holder of the certificate, that it is made unlawful to cut and remove timber from lands sold for taxes. The certificate which was dated on September 5, 1871, was assigned to Chalmers, January 13, 1874. That which was dated September 3, 1872, was also assigned, January 13, 1874. By the laws of Wisconsin, the owner or occupant of any lands sold for taxes may redeem the same at any time within three years from the date of the certificate of sale. As respects the first certificate, Chalmers held it for about eight months before the expiration of the period of redemption, and, according to the finding of the referee, it would seem that Chalmers did not become *owner* of the land embraced in the certificate, and the timber thereon, until he received this tax deed, some three months later. As to the second certificate, Chalmers held it for nearly twenty months before the expiration of the period of redemption, and the tax deed was not issued to him until some eight months later. With regard to the lands covered

by both certificates, there was a period of about eight months or more in one case, and about twenty months or more in the other case, during which the defendants might, so far as appears, have lawfully gone on, under the permit given by plaintiff and those associated with him, to cut and remove the timber on the lands; and, in addition, as purchasers of the timber, and, if they had entered upon the lands, and gone on to cut and remove the timber, as occupants of the lands, the defendants would appear to have been in a position entitling them to redeem from the tax sales. Now, the referee has found that all the parties to the supplemental contract knew at the time of its execution, and at the time of the execution of the note in suit, that there were unpaid taxes claimed to be due upon the lands embraced in the certificates. The right of the defendants to enter upon the lands, and cut and remove the timber thereon, whenever the tax certificates were assigned by the county, and held by a private person, as well as the right to redeem from the tax sales, were a part of the consideration of the note, and valuable. It does not, then, appear that the right to enter upon, and cut and remove from the eighty-acre tract the timber thereon, was the only part of the consideration of the note in suit which had not failed.

If the defendants claimed a partial failure of the consideration of the note, the burden was upon them to show to what extent—that is, to what value—it had failed. This is so, because the note was presumptively founded upon a valuable and sufficient consideration. Now, while it appears that to the extent of the timber on the eighty-acre tract, of the estimated value of $1,000, the note was founded upon a valid consideration, it does not appear what the proportionate value of the rights and privileges above referred to, in relation to the school lands and the lands sold for taxes, was, nor to what proportionate extent the defendants were damaged by the fact that they were not able to avail themselves of the full extent of the permit given by plaintiff and those with him; for the

full term of five years. In other words, it does not appear what proportion of what was granted the defendants lost. Now, the finding of the referee is presumably right. If there was error, defendants must make it appear affirmatively. None of the evidence in the case is returned here, and the facts, as found by the referee, do not show that there was any evidence in the case which would have enabled the referee to find to what extent the consideration of the note had failed. For these reasons, the finding of the referee, as it is not shown to be wrong, must be held to be right, and the judgment entered upon his report is accordingly affirmed.