HERMAN, Appellant, vs. GRAY, Respondent.

*February 10 — February 24, 1891.*

CONTRACT: *Remedies for breach: Fraud as a defense.* PLEADING: *Counterclaim or defense.*

1. Where a purchase of property is induced by fraud and false representations, the purchaser may elect to rescind the contract because of the fraud, offer to return the property, and demand a return of the money and notes given in execution thereof; or he may counterclaim his damages for such fraud in an action by the vendor for the price; or he may pay the stipulated consideration and sue the vendor for his damages.

2. Fraud and false representations on the part of a vendor of patent rights and machines made under them, which are worthless, inducing the purchase, are sufficient grounds for a rescission of the contract, and, while such contract remains entirely executory, may be a complete defense to an action by the vendor for non-performance; but after the contract has been fully executed, if the patents are of any value whatever, even gross fraud will not defeat an action for the purchase price, nor will it reduce the recovery unless properly pleaded in that view.

3. The fact that the purchaser gave to the vendor a chattel mortgage on the property, which he still retains, does not render an offer to reassign or reconvey unnecessary to a rescission.

4. An answer, in an action upon a promissory note given for the purchase money of patent-rights and machines made under them, which alleges that such machines were wholly impracticable, unfit for use and worthless, and that the purchase thereof by defendant was induced by false and fraudulent representations of plaintiff, but does not allege any facts showing a rescission of the contract by defendant, or entitling him to have a rescission adjudged, nor specify the damages caused by such fraud, though it does demand

judgment for the sums paid on account of the purchase, must be construed as setting up the defense of total failure of consideration, and not a partial failure thereof, or a counterclaim.

5. In order to entitle the defendant to rescission or the relief asked in such answer, it should allege an offer, or a readiness, to return the property purchased to the plaintiff, or, instead thereof, a notice to plaintiff that defendant elected to rescind, and a denial by the plaintiff of his right to do so.

APPEAL from the Circuit Court for *Kenosha* County.

This action is upon a promissory note made by defendant to plaintiff, or order, for $1,364, with interest, dated July 11, 1887, and due three months after date. The complaint is in the usual form of complaints in such actions. The amended and supplemental answer of defendant admits the making of the note, but denies any indebtedness thereon to plaintiff. It alleges that the note was given in renewal of another note, dated July 8, 1886, given in part payment for a half interest in certain personal property sold by plaintiff to defendant, together with a one-half interest in a certain patent-right and improvements thereon covering a machine known as the "Gaylord-Martin Patent Brick-Machine," designed and intended for mixing clay and making bricks; and that the machines, constructed in accordance with the specifications in the patent, are wholly impracticable, unfit for use, and worthless.

The answer then proceeds to allege, at considerable length, that the defendant was induced to make such purchase by means of numerous false and fraudulent representations, therein stated, made by plaintiff to him respecting the value of the patent, and the qualities and value of machines constructed under it, upon the truth of which representations the defendant relied in making the purchase; also that the price agreed upon therefor was $4,500, of which sum defendant then paid plaintiff in cash $1,136, and gave his two promissory notes for the balance of the $4,500, one of them being the note in renewal of which the

note in suit was given; and that on July 8, 1887, he paid the plaintiff $617 on the other note. The answer further alleges that, at the time of such sale, the plaintiff agreed to sell to the defendant, in connection with such interest in the patent, a one-half interest in several machines already built, but that such machines were and are worthless.

Such amended and supplemental answer was filed by leave of court, on condition that defensive matter only should be pleaded therein, and it was treated on the trial as a defense only to the action, and not as containing a counterclaim. It contained, however, a demand for judgment against plaintiff for the sums paid him by defendant on account of such purchase.

The jury found a special verdict, consisting of answers to sixteen questions of fact submitted to them by the court, nearly all of which relate to the false and fraudulent representations made by plaintiff to defendant, and to the question whether the defendant received for his use and benefit any of the proceeds arising from the sale of three of the machines included in such purchase. Such questions were all answered in favor of the defendant; that is to say, the jury found that the alleged fraudulent representations were made by plaintiff as charged in the answer; that they were false to the knowledge of the plaintiff; that the defendant believed them to be true, and relied upon them in making the purchase; and that he received none of the proceeds of three machines included in the purchase, which were afterwards sold. They also found that machines constructed under the patent were not useful or valuable, and that the defendant received no valuable consideration for the note in suit.

Successive motions by plaintiff for judgment on the special verdict, and for a new trial, were overruled, and judgment for defendant was ordered and entered, dismissing the complaint, with costs. The plaintiff appeals from the judgment.

*Frank M. Hoyt*, for the appellant, contended, among other things, that to rescind a contract, a party must first restore or offer to restore, without unnecessary delay, whatever he has acquired by it. *Simmons v. Putnam*, 11 Wis. 193; *Williams v. Ketchum*, 21 id. 432. Where the defense is a total failure of consideration, any value shown to have been received under the contract defeats the plea. *Johnson v. Titus*, 2 Hill, 606. Where partial failure of the consideration is alleged, the extent of the failure must be alleged and proved. *Bisbee v. Torinus*, 26 Minn. 165. The sale of machines manufactured under the rights acquired by the contract estops the party to allege that the contract is void. *Webster-Glover L. & M. Co. v. St. Croix Co.* 71 Wis. 317; *Cogswell v. Colby*, 22 id. 399. The election to abide by or rescind the contract must be made as soon as the fraud is discovered. Acquiescence in the sale is an election, and will not be affected by the discovery of a new incident in the fraud. *Grannis v. Hooker*, 31 Wis. 474; *Abbott v. Johnson*, 47 id. 239; *Keller v. Oberreich*, 67 id. 282; *Locke v. Williamson*, 40 id. 377; *Thompson v. Libby*, 34 Minn. 374; *St. John v. Hendrickson*, 81 Ind. 350; *Troup v. Appleman*, 52 Md. 456.

For the respondent there was a brief by *Williams, Friend & Bright*, and oral argument by *O. T. Williams*.

They argued that the plaintiff, having failed to perform the contract, was not entitled to judgment. *Moritz v. Larson*, 70 Wis. 570. Gross inadequacy of consideration is conclusive evidence of fraud, and good ground for canceling the contract. Kerr, Fraud, 186; *Kuelkamp v. Hidding*, 31 Wis. 503. The note in suit was without any consideration, the patents and machines being practically useless. *Rowe v. Blanchard*, 18 Wis. 441; *Page v. Dickerson*, 28 id. 695; *Rice v. Garnhart*, 34 id. 453; *Dickerson v. Hall*, 14 Pick. 217. The defendant is not estopped from setting up this defense by his delay in doing so. *Badger v. Badger*, 2 Wall. 87; *Veazie v. Williams*, 8 How. 134. The plaintiff is not

injured by such delay, as he still holds his chattel mortgage. *Railroad Co. v. Dubois*, 12 Wall. 47; *Clough v. Patrick*, 37 Vt. 421; *Waterbury v. Andrews*, 67 Mich. 281; *Bowman v. Patrick*, 36 Fed. Rep. 138; *Booth v. Smith*, 117 Ill. 370; *Gridley v. Globe Tobacco Co.* 71 Mich. 528. Where a purchase was induced by fraud, no formal restoration is necessary to a rescission. *Higham v. Harris*, 108 Ind. 246.

LYON, J.    Before and at the time defendant purchased the property in question, the plaintiff and one Gurney were owners of two letters patent, one of which was issued in 1883 on an invention by one Martin of a machine for making bricks, and the other was issued in 1885 to Martin for improvements of such machines, which improvements consisted mainly in adding crushers thereto. Plaintiff and Gurney were engaged as partners in the manufacture and sale of the machines. The title to the patents was in Gurney.

The sale of the property in question by plaintiff to defendant is evidenced by an agreement in writing, signed by the parties, in and by which plaintiff sold and conveyed to defendant for the consideration of $4,500, his one-half interest in all brick machines which Gurney and the plaintiff then had, and the materials which go in connection therewith, and in the patents covering such machines; plaintiff to procure the proper assignments thereof from Gurney to defendant.

In execution of the agreement, Gurney assigned to defendant a one-half interest in both patents, and defendant paid plaintiff $1,136 in cash, or its equivalent, and gave plaintiff his two promissory notes for the balance of the $4,500,— one for $2,000, and the other for $1,364,— and executed to plaintiff a chattel mortgage on such patents to secure the payment of the notes. The note in suit was given in renewal of the latter note. Defendant has since

paid $617 on the $2,000 note. Immediately after such pur-
chase, Gurney and defendant formed a copartnership, under
the firm name of Gurney & Co., for the purpose of contin-
uing the business theretofore carried on by Gurney and the
plaintiff. It seems that the business of Gurney & Co. was
confined to disposing of some of the machines on hand at
the time of the purchase.

The amended and supplemental answer, which raised the
issues on which the case was tried and determined, contains
numerous averments which are proper subjects of a coun-
terclaim for damages caused by the alleged false and fraud-
ulent representations of plaintiff; but such averments are
not sufficiently pleaded as a recoupment of damages or
counterclaim, in that they do not specify the amount of
damages caused thereby, nor demand judgment therefor.
The demand in such answer for judgment against plaintiff
for the sums paid by defendant on account of his purchase
of the property is entirely unsupported by any of the aver-
ments in the pleading. To entitle him to such relief, the de-
fendant must aver facts showing a rescission of the contract
of purchase, or which entitle him to have such rescission
adjudged, and there must be a demand of judgment there-
for. Until the contract is rescinded in some manner defend-
ant cannot maintain an action to recover such payments.
No such facts are averred. Before the contract can be re-
scinded, the defendant must allege an offer to return to
plaintiff the property so purchased, or his readiness to re-
turn the same; or, instead of such offer, that he elected to
rescind the contract, and the plaintiff denied his right to do
so. Some of these, or equivalent, averments are essential
to the right of rescission. See *Potter v. Taggart*, 54 Wis.
395. The answer contains no such averments. The court
restricted the defendant to answer defensive matter alone,
when it granted him leave to interpose his amended and
supplemental answer; and we think the same does not

overstep such limitation. It was so regarded on the trial of the cause. It should also be observed that the novelty of the inventions covered by the letters patent is not questioned in the answer, and the court properly excluded all evidence to prove that the invention was not new.

It being thus determined that the amended and supplemental answer contains no recoupment or other counterclaim, it results that no affirmative relief can be granted defendant under it. It also results from what has been said that the answer contains but a single defense to the action, to-wit, a total failure of the consideration for the note in suit. If a partial failure of such consideration may be pleaded as a defense (which may well be doubted), no such defense is sufficiently pleaded in this answer; for the amount of damages resulting from the alleged false and fraudulent representations is not alleged.

Counsel for defendant seems to argue that the fraud of the plaintiff in thus inducing defendant to purchase such interest in the patents defeats a recovery on the note given in part payment therefor. Such fraud was undoubtedly sufficient ground for rescinding the contract; also, while it remained entirely executory, the fraud might be a complete defense to an action brought by plaintiff to recover damages for a failure on the part of defendant to perform the contract. But the contract under consideration has been fully executed; and, if the patents are of any value, fraud, no matter how gross, will not alone defeat the action, nor reduce the recovery, unless properly pleaded in that view. *Johnson v. Titus*, 2 Hill, 606. If the patents are of no value, the action fails for that reason, not because of the fraud. Although the testimony tends to prove, and the jury have found, such fraud, there is no finding and no testimony as to what extent the consideration of the note has failed because thereof. In such case, unless there was a total failure of consideration, the plaintiff is entitled to

judgment for the full amount due on the note by its terms. *Bisbee v. Torinus,* 26 Minn. 165.

When defendant learned that the alleged representations made to him by plaintiff to induce him to purchase the patents were false and fraudulent three remedies were open to him: (1) He might have notified the plaintiff that he elected to rescind the contract because of such fraud, and demanded a return of the money paid and notes given in execution of the contract, and at the same time offered to reconvey the property in question to plaintiff. This would have laid a foundation for an action to recover the money paid on the contract and to cancel the notes. Or (2) he might have waited for the plaintiff to bring suit on the notes and then counterclaimed in such action for his damages caused by such fraud; the measure of which damages would be the difference between what would have been the value of the property had it been as represented and its value as it actually was. Or (3) he might have paid the stipulated consideration for the property and then sued the plaintiff to recover such damages. Thus far the defendant has not sought to avail himself of any of these remedies.

It may be urged — and inferentially, at least, has been — that because defendant gave a chattel mortgage on the property in question, to secure the payment of the notes, thus vesting in the plaintiff title thereto, an offer to reassign or reconvey the same is unnecessary to a rescission of the contract. But the defendant still has an equity of redemption in the property; and the necessity of a release of such interest to an effectual rescission of the contract is just as imperative as it would be for a reconveyance, were the defendant the absolute owner of the property.

There having been no attempt to rescind the contract, and the defendant having failed to interpose any counterclaim for his damages occasioned by the alleged fraud, and there being no proof of the amount of damages which he

suffered thereby, the findings that such alleged fraudulent representations were made, and that the defendant was induced thereby to make the purchase, cease to be significant, as the case now stands on the pleadings and testimony. The findings to the effect that defendant has received no benefit of the proceeds of sales of certain of the machines, an interest in which was transferred to him by the contract, and which machines were afterwards sold by Gurney & Co., are also unimportant. The question is not whether defendant made or lost money by his purchase, but whether machines constructed under the patents, or either of them, are of practical utility for the uses and purposes intended by the patentee; that is, for mixing clay and making bricks. If they are useful for those purposes, the invention is valuable, and there was a valid consideration for the notes given for an interest in the patents. *Rowe v. Blanchard*, 18 Wis. 441.

The remaining findings are, in substance, that machines constructed under such patents are neither valuable nor useful, and that there was no valid consideration for the note in suit. The novelty of the patented invention is not here in controversy. If these findings are upheld, they establish a total failure of the consideration for the note, and the judgment dismissing the complaint should not be disturbed.

The only remaining question to be determined is, therefore, Does the testimony support such findings? or, rather, Does the uncontradicted testimony prove that machines manufactured pursuant to the patents, or either of them, are of practical utility for the purposes intended? There is considerable testimony tending to prove, perhaps proving, that several of these machines, most of them constructed with crushers under the patent of 1885, did not do good work, and were practically worthless. There is also a large amount of testimony showing the circumstances

and conditions under which these machines were tested.
Were this all there is of the case, the verdict and judgment
could not properly be disturbed.   But, on the other hand,
there is undisputed testimony in the case proving that cer-
tain other machines, also constructed pursuant to the pat-
ents, mostly without crushers, under the patent of 1883,
have done and are doing good work, and are entirely satis-
factory to those operating or who have operated them.   It
is thus proved that machines constructed under at least
one of these patents are of practical utility for the pur-
poses intended by the inventor, and therefore valuable.
There are many conditions, such as unskilfulness of build-
ers or operators, defective material in the machines, and
other unfavorable conditions, which may render a machine
practically useless, and at the same time the invention be
valuable.   This is well illustrated by some items of testi-
mony in the case.   A witness testified that he purchased
one of these machines, and it did not work well.   The
manufacturers sent an expert several times to put it in
order, but he failed to remedy the defects.   The witness
then employed a machinist, not an expert in the business,
and in half an hour, by some slight change or modification
of some part of it, not affecting the principle of the pat-
ented device, he put it in good order, and from thenceforth
it did good and satisfactory work.   Another witness was
unable to operate successfully one of the crusher-machines.
He removed the crusher, and thereafter it worked to his
entire satisfaction.   Hence proof that some of these ma-
chines worked badly does not necessarily prove that the
fault is in the invention.   There is some testimony of ex-
perts tending to show that the principle of the patented
device is faulty; but when it is proved that machines con-
structed in accordance with such device do good work, and
are entirely satisfactory to those persons using them, it is
demonstrated that the defects in those which have failed

Herman vs. Gray.

to do good work is not in the principle of the invention, but is to be attributed to some adverse conditions not inherent in the patented device. If proof that one or several machines, constructed pursuant to the specifications of any given patent, failed to do the work they were intended to do, would defeat the patent as worthless, but few patents would stand. Moreover, proof that several machines so constructed did their work well, and were of utility, ought to overcome any mere opinions of experts that the invention is defective in principle.

It is unnecessary to elaborate the subject further. We are clearly of the opinion that the patents in question, especially that of 1883, are conclusively proved to be of practical utility for the purposes intended, and hence that the same were valuable, and a sufficient consideration for the note in suit. On this general subject, see Bump. Pat. p. 92, tit. " UTILITY." The verdict was therefore against the evidence, and a new trial should have been awarded.

Many other errors are assigned upon the rulings of the court on the trial and the charge to the jury. It is unnecessary to determine them, as the same questions will probably not arise in another trial. We perceive no good reason why the defendant should not be permitted, on proper terms, to amend his answer by inserting therein an appropriate counterclaim founded on the alleged fraud, and any other defense he may have to the action not contained in his present answer.

But few cases have been cited in this opinion, because the principles laid down are quite elementary. The whole case has been ably and very fully argued by counsel, and many cases cited to sustain their respective positions.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.