ROSENBERG, Appellant, vs. McKINNEY, Respondent.

*February 16—March 9, 1909*

*Sales: Fraud: Election to affirm: Conversion of personalty: Evidence: Appeal: Direction of judgment below.*

1. Where the purchaser of corporate stock, after discovery of a fraud whereby he was induced to make the contract of purchase, elects to receive the benefits of the contract instead of to rescind it, he is liable, notwithstanding the fraud, for the agreed purchase price.

2. Defendant's affirmance, after full knowledge of all the facts, of his contract to purchase certain corporate stock is *held* in this case to be so conclusively established by his own evidence that on reversal of a judgment entered upon a verdict in his favor the supreme court does not order a new trial, but directs judgment in favor of the plaintiff.

3. A verdict to the effect that plaintiff had wrongfully converted to his own use corporate stock delivered to him by defendant is *held* to be sustained, although there was conflict and confusion in the evidence as to the agreement under which it was delivered and as to plaintiff's refusal to return it.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

Plaintiff sued on a note dated May 24, 1905, due in 120 days, for $1,000, which was duly indorsed to him and of which he claimed to be an innocent holder for value in due course. Defendant set up that the note was given for certain mining stock of the Standard Lead & Zinc Smelting & Mining Company, for which he was induced to pay $1,000 in money and to give his four $1,000 notes by fraudulent representations of one Davidor, an officer of the company. The answer also set up by way of counterclaim that the plaintiff was indebted to him for certain 10,000 shares of the stock so purchased which had been delivered by defendant to plaintiff and retained and converted by the latter. The jury rendered a verdict for defendant on the plaintiff's cause of action, and also for the defendant upon his counterclaim for the sum of

$750 and interest, from judgment upon which verdict the plaintiff appeals.

*C. H. Hamilton,* for the appellant.

For the respondent there was a brief by *Boden & Beuscher,* and oral argument by *F. X. Boden.*

Dodge, J.    1. The trial and record in this case were confused and amplified by a tremendous amount of utterly irrelevant testimony and evidence, much of it so inadmissible that it was an abuse to occupy the court therewith; but, almost incidentally, a small amount of undisputed evidence, mainly from the defendant himself, appears in the record which we deem wholly conclusive of the rights of the parties upon the cause of action presented by the complaint.    The cause of action is on a note given for part of the purchase price of a quantity of capital stock.    The defense thereto is fraud on the part of the taker of the note in stating to the maker "that there was no promotion stock in the company, that defendant should be elected a director, and that all the other directors had paid for stock which they held."    This is pleaded as a defense and as a reason why defendant should be relieved from his contract to pay for the stock.    It is tantamount, of course, to rescission.    If it be conceded that the statements were false, were originally relied on, and might constitute actionable fraud, the defendant, when he discovered the falsity, doubtless had a right of election to promptly rescind and demand release from his promise to pay; but he equally had the option to retain that which he had received, thereby affirming the contract with the accompanying right to recover such damage as he had suffered by reason of the fraud.    It is established most conclusively by defendant's own evidence that the falsity of any of these statements which might have constituted fraud became fully known to him very shortly after the purchase of the stock.    He was immediately elected a director.    He joined in a confederacy to place the stock of himself and the other directors in the hands of an escrow to hold

the same out of the market in order to facilitate jobbing its price.    He had full access to the books, participated actively in the examination of the property which the corporation had received as a consideration for the issue of this stock, learned of the terms under which one half of the stock of the corporation had been issued to the seven directors, including himself; so that, if it met the definition "promotion stock," he knew of the fact, and he himself testified that he learned as early as July, after the purchase, that the whole scheme was a fraudulent conspiracy.    Meanwhile he continued to hold all rights gained by the purchase.    He availed himself of the opportunity as a member of what he describes as a fraudulent conspiracy to manipulate and deal in what small amount of the stock of the corporation had reached the general market, buying and selling the same in association with Davidor in anticipation of the effect on its price to be accomplished by manipulation by the conspirators of the other stock of the company.    In September, knowing that the plaintiff had acquired ownership of this note, he employed or requested him to secure a consent by the other directors that the certificate for his stock be released from escrow so as to place it within his own control, and in consideration of their consent thereto and his receipt of the certificate he executed the following instrument:

"In consideration of the release from escrow of certificate No. 129 in Standard Lead & Zinc Smelting & Mining Company for 61,428 shares, I agree to forthwith deliver to said company a certain contract for the acquisition by me of 71,428 shares of said stock, and to accept said 61,428 and 10,000 shares heretofore delivered, in full satisfaction of said contract, and also to deliver duplicate escrow agreement in my possession.    And I further agree that said stock is received by me in full satisfaction of the payment by me of $5,000 heretofore made by me for said stock."

From these facts, which are undisputed, no conclusion is possible but that in September the defendant with full knowledge elected to receive the benefits of his contract instead of

to rescind it. He himself testifies that the stock was salable at that time on the market for three or four times as much as he paid for it, so that his motive to so elect was obvious. Indeed, the very counterclaim upon which defendant recovered in this action is predicated upon his ownership of 10,000 shares of said stock, which ownership results alone from the existence of the contract, his part of which was to pay this note with others. The denial of the validity of the note sued on is wholly inconsistent with such action. *Van Trott v. Wiese,* 36 Wis. 439; *Herman v. Gray,* 79 Wis. 182, 48 N. W. 113; *Peerless R. Co. v. Conway,* 79 Wis. 622, 48 N. W. 854; *Palmer v. Banfield,* 86 Wis. 441, 56 N. W. 1090; *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *Davis v. Schmidt,* 126 Wis. 461, 106 N. W. 119; *Fox v. Wilkinson,* 133 Wis. 337, 342, 113 N. W. 669. He has elected to affirm the contract by taking the benefits under it, and must therefore perform his part of it; *i. e.* pay the agreed purchase price.

2. Upon the question of the counterclaim there is no dispute that the plaintiff received from the defendant a certificate for 10,000 shares of the latter's stock. The plaintiff says he received it in payment for his services in obtaining at defendant's request release of the rest of his stock from deposit in escrow. Defendant denies the making of any such agreement and asserts with equal positiveness that he delivered it to plaintiff to procure retransfer in smaller amounts convenient for sale in the market. Thus, while plaintiff is in some measure corroborated, there was a sufficient conflict of evidence to support a verdict either way upon the terms of the contract accompanying the delivery of the stock to the plaintiff. His refusal to return it to defendant is also supported by some evidence, although involved in some measure of confusion. We therefore are unable to convince ourselves that we could be justified in reviewing the action of the jury upon this subject. We find none of the other assignments of error

in any wise relevant to this cause of action, and therefore conclude that the verdict on the counterclaim must stand.

The defendant's affirmance of his contract to take and pay for the 71,428 shares of stock after full knowledge of all of the facts is so conclusively established by his own evidence that we cannot think that a new trial can be in any wise necessary or proper within the meaning of sec. 3071, Stats. (1898). That could not be overcome except by testimony in defiance of defendant's own statements and admissions. It would but open the door to perjury to submit the controversy to trial again. *Hay v. Baraboo,* 127 Wis. 1, 105 N. W. 654. We think that justice requires that this controversy be terminated, and that judgment be entered in accordance with the finding of the jury on defendant's counterclaim and with the undisputed facts upon the plaintiff's cause of action.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff, as of July 8, 1907, for $264.58, together with costs.