(103 N. W. 760.)

---

## J. K. Sonnesyn v. L. W. Akin and G. M. Babcock.

Opinion filed May 20, 1905.

**Contract — Fraudulent Representations — Option to Rescind.**

1. One who is defrauded by a false statement, which is made to induce and does induce the execution of a contract, has a choice of remedies: (1) To affirm the contract and take its benefits, so far as obtainable, and recover any damages sustained by the false statement; or (2) to rescind the contract and recover any moneys paid or property delivered under it.

**Fraud — False Statements.**

2. A false statement, to be actionable, must be attended or followed by injury.

**Same—Evidence of Damages.**

3. The plaintiff made a written contract to purchase certain real estate from the defendants. One of the inducements to make the contract was their false statement that they had the legal title to the land. Defendants perfected their title and tendered proper conveyances of title at the time and place fixed by the contract. At the trial of plaintiff's action to recover damages for the false statement the jury returned a verdict in his favor, general in form, but without fixing any sum as damages. They also made certain special findings. These were also silent as to the amount of damages. The trial judge thereafter awarded a recovery to plaintiff. Defendants moved, upon the minutes, to vacate the verdict and judgment upon the ground that (1) the verdict and damages were excessive, (2) that the evidence is insufficient to justify the verdict, and (3) that the verdict is against and contrary to law. *Held,* (1) that there is no evidence that the false statement was attended with or followed

by injury or damage; (2) that the record presents a case of mistrial, and that the motion was properly granted and must be affirmed.

Fisk, district judge, dissenting.

Appeal from District Court, Cass county; *Pollock*, J.

Action by J. K. Sonnesyn against L. W. Akin and G. M. Babcock. Judgment for defendants, and plaintiff appeals.

Affirmed.

*Morrill & Engerud* and *Frich & Kelly,* for appellant.

The fifth ground for a motion for a new trial, viz: "Excessive damages appearing to have been given under the influence of passion or prejudice," is available only where, though the case may be properly submitted, the jury have given damages in an unreasonable amount on account of passion or prejudice. 14 Enc. Pl. & Pr. 886; Hayne on New Trials, 563, section 3; Mechelke et al. v. Bremer, 17 N. W. 682; Pratt v. Pioneer Press Co., 18 N. W. 836.

It is not claimed that the specifications of error did not justify the findings of fact made by the jury, and no other grounds under the statute can be considered. Section 5467, Rev. Codes 1899; Baumer v. French, 8 N. D. 319, 79 N. W. 340; Parrot v. Hot Springs, 68 N. W. 329; Gould v. Elevator Co., 2 N. D. 216, 50 N. W. 969; McKenzie v. Bismarck Water Co., 6 N. D. 361, 71 N. W. 608; Ilstad v. Anderson, 2 N. D. 167, 49 N. W. 659; Flugle v. Henschel, 6 N. D. 205, 69 N. W. 195.

False representation as to title is fraud. 14 Am. & Eng. Enc. Law (2d Ed.) 130.

In case of fraud the party defrauded can recover what he has parted with or its value by reason of the fraud. 6 Wait's Ac. & Def. 132-133; 14 Am. & Eng. Enc. Law (2d Ed.) 165; Nichols v. Michaels et al., 23 N. Y. 264.

By exercising this right the contract was extinguished, and the position of the parties became the same as if there had never been such a contract. Section 3931, Rev. Codes 1899; 14 Am. & Eng. Enc. Law, 158.

Party who fraudulently obtained possession of the property, could be sued in replevin or conversion, or the tort could be waived and suit be brought on implied contract. See authorities supra.

Instead of rescinding, the defrauded party could affirm, and if he eventually suffered any detriment by the fraud, he could recover

whatever damages he could show he had suffered by the deceit. 3 Wait's Ac. & Def. 452-454.

*Pierce & Tenneson,* and *Ball, Watson & Maclay,* for respondents.

Representations concerning ownership are generally material, but not always. Huffman v. Long, 42 N. W. 355.

Misrepresentations, which are material when made, may become immaterial, because no damage is suffered on acount of them, and the reason that they are immaterial may be because no damage has followed. Wiley v. Howard, 15 Ind. 169; Barber v. Kilbourn, 16 Wis. 485; Beard et al. v. Bliley, 34 Pac. 271; Armstrong v. Breen, 69 N. W. 1125; Davidson v. Moss, 5 How. 673; Johnson v. Seymour, 44 N. W. 344; Hunt v. McConnell, 1 T. B. Mon. 222.

Fraud without damage gives no cause of action. Marriner v. Denison, 20 Pac. 386; Purdy v. Bullard et al., 41 Cal. 444; Freeman v. Venner, 120 Mass. 424; Bartlett v. Blaine, 85 Ill. 25.

In case of an executory contract for the sale of land, if the vendor sells it to a third person prior to the time for the consummation of the contract, this does not constitute a ground for rescission, for the vendor may reinvest himself with the title. Joyce v. Shafer et al., 32 Pac. 320; Garbirino v. Roberts, 41 Pac. 857; Royal v. Dennison et al., 42 Pac. 39.

The party rescinding a contract must inform as to whom he rescinds as soon as possible, so that both parties may be put in statu quo. Section 3934, subdivision 1, Rev. Codes 1899; Snow v. Alley, 11 N. E. 764.

Plaintiff's action is an action upon the case for damages for fraud and deceit, and it goes upon the theory of the continued existence of the contract which was induced by the fraud complained of. Whiteside v. Brawley, 24 N. E. 1088; Heastings v. McGee, 66 Pa. St. 384; Kimball v. Cunningham, 4 Mass. 502, 505; Johnson v. Cookerly, 33 Ind. 15; Wheeler v. Dunn, 22 Pac. 827; Stuart v. Hayden, 169 U. S. 1, 18 Sup. Ct. Rep. 274; Chilson v. Houston, 9 N. D. 498, 503, 84 N. W. 354.

One seeking rescission must put him as to whom he rescinds in statu quo. Hammond v. Pennock, 61 N. Y. 145.

When the complaining party seeks to compel the other to buy his property, whether he will or not, his conduct is an affirmance of the contract. Hendricks v. Goodrich, 15 Wis. 679; Daly v. Brennan, 57 N. W. 963.

In an action of fraud and deceit, the cause of action requires damages as one of the essential elements, and without it there is no right even to nominal damages and no cause of action. Alden v. Wright et al., 49 N. W. 767.

The motion for a new trial was properly granted upon the statutory ground, "insufficiency of the evidence to justify the verdict." 14 Enc. Pl. & Pr. 782, 783, and cases cited; 14 Enc. Pl. & Pr. 776; Algeo. v. Duncan, 39 N. Y. 313; Richardson v. Van Voorhees, 3 N. Y. Supp. 399.

Granting a new trial on above grounds, or that the verdict is contrary to the evidence, is discretionary, and such action will be reversed only for manifest abuse. 14 Enc. Pl. & Pr. 983, 981, 978, 976, 975; Gull River Lbr. Co. v. El. Co., 6 N. D. 276, 69 N. W. 691; Pengilly v. J. I. Case Thresher Co., 11 N. D. 249, 91 N. W. 63.

YOUNG, J. This is an action to recover damages for fraud. The plaintiff has appealed from an order of the district court vacating the verdict and judgment entered therein in his favor and granting a new trial. The defendant's motion for a new trial was made upon the minutes. The granting of the motion is assigned as error. It is essential to a correct understanding of the questions presented upon this appeal to set out the material allegations of the complaint and answer, and also the verdict upon which the judgment vacated was based.

The complaint alleges "that on the 30th day of September, 1902, the defendants, with intent to deceive and defraud the plaintiff, then and there falsely and fraudulently pretended and represented to the plaintiff that they were the owners and legally entitled to enter into a contract to sell and convey to the plaintiff the following described real estate [describing 960 acres of land situated in Ransom county], and could give a contract for a good and perfect title thereto, and would furnish the plaintiff with an abstract of title, which abstract of title would show that the defendants were the owners of said described land and premises and had the legal right to enter into a contract to sell and convey the same; that the plaintiff, relying upon such representations, entered into a contract to purchase the said described premises and land of the defendants, and paid the defendants thereunder, in merchandise and cash, the sum of $12,857.33; that the defendants were not the owners of said described lands and premises, and were not legally entitled to enter into a contract to sell and convey the same, and could not and have not furnished the plaintiff an abstract of title

of said land and premises showing that they were the owners of the same; that at the time plaintiff made the contract with the defendants to purchase said lands and made said payments thereon, said lands were owned by others; * * * that by reason of the premises the plaintiff has been damaged in the sum of $12,857.33" —for which sum he demands judgment.

The defendants, in their answer, admit the execution of the written contract referred to in the complaint, and attach a copy of the same to their answer as an exhibit; this being known in the record as "Exhibit A." They also admit the receipt of a $2,500 cash payment upon the contract, and a further payment by the delivery of the stock of merchandise as alleged in the complaint. But they deny that they stated or represented that they were the owners of the land, and "especially deny that by reason of any of the facts set forth in the complaint plaintiff has been damaged in the sum of $12,857.33, or in any other sum or amount whatever," and allege "that the defendants have duly complied with all the terms and conditions of said written contract, and have tendered to the plaintiff an abstract of title to said premises, and that they are now ready, able and willing to convey, or cause to be conveyed to the plaintiff, by good and sufficient deeds of conveyance, all the lands in said contract mentioned, in accordance with the terms and conditions of said contract, and conveying to the plaintiff full title to all of said lands, as therein mentioned, upon the full performance by the plaintiff of the other terms and conditions of said contract, and that the defendants herewith tender and offer full and complete performance of the terms and conditions upon their part to be performed."

The contract was signed by the plaintiff and by the defendants. By the terms of this contract the plaintiff agreed to purchase the lands in question at an agreed price of $25,920. The contract describes the land, and fixes the terms of payment and rate of interest on deferred payments. Under it $2,500 was to be paid upon its execution, and $10,320 was to be paid by the delivery to the defendants of a certain stock of merchandise, located at Ormsby, Minn., at wholesale price, the taking of the inventory to begin on October 3, 1902. A further payment of $2,500 was to be made on January 1, 1903, when the deal was to be completed. Plaintiff assumed a mortgage upon the land, and was to pay the remainder of the purchase price in five equal annual installments. The contract makes no reference to the ownership of the land or

the condition of the title, but provides that: "An abstract of title is to be furnished to me (Sonnesyn) by you when $2,500 of the purchase money is actually paid, and if such abstract of title is objectionable you are to have until January 1, 1903, after its return to you, with such objections noted, within which to supply any deficiency or make a good merchantable title."

This action was commenced November 26, 1902. The record shows that at the close of the testimony "counsel for the plaintiff moved the court that the case be submitted to the jury upon a list of special questions covering the issues in the case." This motion was granted. Before the proposed questions were submitted to the jury counsel for defendants requested that "questions numbered 3 and 4 be answered 'No,' in order that there may be no confusion arising in the minds of the jury," and the answers were inserted in accordance with such request. Thereafter the jury returned the following verdict:

"We, the jury impaneled and sworn to try the above-entitled action, do find for the plaintiff.

"Dated May 23, 1903.

"[Signed]                                          A. H. BARNES, Foreman.

"Question 1. Did the defendants or either of them, at or before making the contract, 'Exhibit A,' state to or willfully lead the plaintiff to believe that they or either of them owned the lands which they had agreed to sell him? Answer. Yes.

"Question 2. If you answer the above question 'Yes,' did the plaintiff believe and rely upon such statements and representations. and was such belief and reliance one of the inducements that caused him to enter into said contract, and to part with his money and property? Answer. Yes.

"Question 3. Did the defendants or either of them own the lands described in said contract on the 30th day of December, 1902? Answer. No.

"Question 4. Did the defendants or either of them own all of the lands described in said contract at the time this action was commenced, to wit, November 26, 1902? Answer. No.

"Question 5. What was the value of the goods and fixtures delivered to the defendants by the plaintiff? Answer. $10,000.

"Question 6. If plaintiff is entitled to recover, should interest be computed on the damages? Answer. Yes.

"Dated May 23, 1903.

"[Signed]                                          A. H. BARNES, Foreman."

On May 25, 1903, the trial judge directed the entry of judgment against the defendants for $13,052.52; the order therefor reciting that, "the jury having returned a verdict in favor of the plaintiff generally, and having been required to make special findings, which special findings and the answers thereto were as follows [setting out a copy of the above verdict], and the court having, upon said special findings, concluded that the plaintiff is entitled to judgment against the defendants and each of them" for the above sum, orders, etc.

Thereafter the defendants moved, upon the minutes of the court, to vacate and set aside the verdict and judgment and for a new trial. The notice of intention specified the following grounds: "(1) That the verdict and damages are excessive, appearing to have been given under the influence of passion or prejudice. (2) That the evidence is insufficient to justify the verdict in the following particulars, viz.: That the undisputed evidence shows that the plaintiff suffered no loss, damage or injury by reason of the alleged fraud, deceit and false representations made by the defendants; that the undisputed testimony shows that, at and prior to the time of the making of the contracts between plaintiff and defendants, the defendants had agency contracts or other contracts with the owners of the land in question, empowering defendants to purchase said lands or to cause them to be conveyed to others, including the plaintiff; that the undisputed evidence shows that on the 1st day of January, 1903, upon which date the contract between plaintiff and defendants was to be consummated, and long before the trial of this action, the defendants had obtained title in fee to all of said lands, excepting the so-called 'Frey quarter section,' title to which was vested in the defendants upon January 15, 1903; that the undisputed evidence shows that at and prior to the time of the trial of this action the defendants were clothed with the title to all of said lands in fee; that the undisputed evidence shows that the defendants always intended to comply with all the terms of said contract upon their part to be kept and performed from the time said contract was made; that they were at all times from a date prior to the making of said contract in position to acquire title to all said lands; that they did acquire title to said lands prior to the trial of this action; and that, if plaintiff suffered any injury owing to said alleged fraudulent representations, it was a nominal injury only; and that he suffered no real, substantial injury or damages. (3) That the verdict is against and contrary to the law, in that the

undisputed evidence shows that the material allegations contained in the complaint, to the effect that the defendants did not own said lands, were substantially untrue, for the reason that during all times mentioned in the complaint the defendants were the owners of contracts which enabled them to acquire or to have conveyed title to said lands; that said verdict is against law in this: That the undisputed evidence shows said contract between the plaintiff and the defendants was during all the time after it was made, down to and during the trial of said action, a valid, subsisting contract; and that the evidence upon the trial failed to show any breach of said contract on the part of the defendants, or any damage suffered thereunder by the plaintiff."

There is no dispute as to the vital facts upon which the motion for new trial was based. They are substantially as stated in the notice of intention. The defendants made no default in the performance of their obligations under the contract. The trial judge caused the entry of a judgment against the defendants for $13,052.52. This he vacated upon the defendants' motion. The question on this appeal is whether it appears that he abused his discretion in vacating the verdict and judgment and granting a new trial. We are of the opinion that he did not, and that the order must therefore be affirmed. "Where a verdict is vacated and a new trial granted by a trial court upon the ground of insufficient evidence, the court in so doing is acting within judicial discretion, and such discretion will not be disturbed in a court of review, except in cases of manifest abuse." Dinnie v. Johnson, 8 N. D. 153, 77 N. W. 612; Patch v. Railway Co., 5 N. D. 55, 63 N. W. 207; Gull River Lumber Co. v. Osborne, 6 N. D. 276, 69 N. W. 691; Pengilly v. Case Mach. Co., 11 N. D. 249, 91 N. W. 63.

The action is based upon fraud. The fraud alleged consists of the defendant's false statements as to the title and ownership of the land. It seems to have been the theory of plaintiff's counsel, and one adopted by the court in ordering judgment for the plaintiff, that, if the defendant in fact falsely stated that they had the legal title, this statement of itself constituted an actionable wrong, for which the defendants must respond in damages. This is erroneous. It is a well-settled maxim that fraud without injury is not actionable. "The law takes no cognizance of a fraud which does not in fact work some injury." People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451; Eastwood v. Bain, 3 H. & N. 738; Hemingway v. Hamilton, 4 M. & W. 115. "It has been very justly remarked that to sup-

port an action at law for misrepresentation there must be a fraud committed by the defendant and a damage resulting from such fraud to the plaintiff." "Courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury." 1 Story's Equity Jurisprudence, section 202; Vernon v. Keys, 12 East. 637; 9 Cyc. 431, and cases cited. It is accordingly well settled that false statements of a vendor of real estate in procuring the execution of a written contract for the purchase and sale thereof, which are neither attended nor followed by injury, will not sustain an action for deceit. As to this action it is said that "there must not only be a false representation made with intent to deceive, but the representation must be relied on and cause damage to a party before an action will lie." Barber v. Kilbourn, 16 Wis. 485; Castleman v. Griffin, 13 Wis. 535; Freeman v. Venner, 120 Mass. 424; Ide v. Gray, 11 Vt. 615; Randall v. Hazelton (Mass.) 12 Allen, 412; Fuller v. Hogdon, 25 Me. 243. In Alden v. Wright, 47 Minn. 225, 49 N. W. 767, the court states that one of the essential elements which constitutes a cause of action for deceit is "that the party induced to act has been damaged. He must have acted on the faith of the false representation to his damage. The party cannot sustain an action of this character when no harm has come to him. Deceit and injury must concur"—citing numerous cases. And it is equally well settled that a court of equity will not adjudge a rescission of a contract for the purchase and sale of real estate on account of fraudulent representations in procuring its execution, unless damage or injury is shown. Marriner v. Dennison, 78 Cal. 202, 20 Pac. 386; Bailey v. Fox, 78 Cal. 389, 20 Pac. 868; Morrison v. Lods, 39 Cal. 381; Purdy v. Bullard, 41 Cal. 444; Wainwright v. Weske, 82 Cal. 193, 23 Pac. 12; Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; Smith v. Richards, 13 Pet. (U. S.) 26, 10 L. Ed. 42; Wainscott v. Occidental, etc., Ass'n, 98 Cal. 253, 33 Pac. 88; Huffman v. Long (Minn.) 42 N. W. 355; Johnson v. Seymour (Mich.) 44 N. W. 344; Armstrong v. Breen (Iowa) 69 N. W. 1125; Beard v. Bliley (Colo. App.) 34 Pac. 271; Nelson v. Grondahl, 12 N. D. 130, 96 N. W. 299, and cases cited.

If one is actually defrauded by a false statement which induced him to enter into a contract, he has his remedy for the injury. The contract thus procured is not void, but voidable. 9 Cyc. 431; 14 Am. & Eng. Enc. Law, 156, and cases cited. He may either

rescind the contract and recover any sums paid upon it, or property delivered pursuant to it, or he may affirm the contract, take such benefits as are obtainable under it, and recover damages for the injuries sustained by reason of the false statement. Tice v. Zinsser, 76 N. Y. 549; Krumm v. Beach, 96 N. Y. 398; Gifford v. Carvill, 29 Cal. 589; Herrin v. Libbey, 36 Me. 350; Burton v. Stewart (N. Y.) 3 Wend. 236, 20 Am. Dec. 692; Purdy v. Bullard, 41 Cal. 444. These alternative remedies, it will be seen, are inconsistent, and are not available in the same action; for one is based upon a rescission of the contract and the other upon an affirmance of it—one upon a contract implied by law obligating the wrongdoer to restore whatever of value he has received; the other in tort for damages for the injury done by the false statement. When the person injured elects the latter remedy, i. e., to sue for the tort, he affirms the contract, thus continuing it as a binding obligation. Heastings v. McGee, 66 Pa. 384; Kimball v. Cunningham, 4 Mass. 502, 3 Am. Dec. 230; Whiteside v. Brawley (Mass.) 24 N. E. 1088; Johnson v. Cookerly, 33 Ind. 151; Wheeler v. Dunn (Col.) 22 Pac. 827; Stuart v. Hayden, 72 Fed. 402, 411, 18 C. C. A. 618; Chilson v. Houston, 9 N. D. 498, 84 N. W. 354. And "it is the rule that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after the discovery of the fraud, and that, when he once elects, he must abide by his decision." Dennis v. Jones, 44 N. J. Eq. 513, 14 Atl. 913, 6 Am. St. Rep. 899; Bigelow on Fraud, 436. In this case the plaintiff elected to sue for damages for the alleged fraud. In doing so he affirmed the contract. It stands undisputed in this case that the defendants were prepared and offered to convey the land when performance was due under the contract. Plaintiff was thus tendered the full fruit of his bargain in accordance with the terms of his contract of purchase. The false representation was, therefore, without injury or damage; for there has been no failure of title, and no other cause for damage is alleged, or even suggested. Upon this state of facts it is apparent that the verdict is without support in the evidence. Plaintiff alleges that he was damaged by the false statement. The fact that the evidence fails to show that the false statement was followed by injury is fatal to a recovery. Plaintiff's counsel properly concede that the verdict has no support in the evidence if the action be treated as one for deceit, because there is no evidence that any injury or damage resulted from the false statement, and

admit there has been no default under the contract. They seek to sustain their recovery, upon the theory that the action is based upon a rescission of the contract.

Upon a former appeal from an order dissolving an attachment in this case, we construed the complaint as stating a cause of action for deceit. Sonnesyn v. Akin, 12 N.D. 227, 97 N. W. 557. This construction of the complaint was not then challenged. Neither was it challenged in the plaintiff's petition for rehearing or in the brief upon the rehearing, both of which were filed after the trial of the action. His counsel now contend, however, that the action rests upon a rescission of the contract. Their present position, as stated in their brief, is as follows: "The alleged fraud vitiated the contract.   *   *   *   Our case is based upon the theory that the contract was disaffirmed by bringing the action. *   *   *   Our claim is that the fraud destroyed all of the contract. Our cause of action is not based upon the contract, but is founded on the fraud, and assumes that there never was any contract. *   *   *   It has been disaffirmed for fraud, and thereby utterly destroyed." This theory of the action is not sustained by the pleadings. Neither does the evidence or findings afford grounds for sustaining a recovery, either upon the ground that the contract was void without disaffirmance or that it was avoided by disaffirmance. That the contract was not void, but at the most voidable, has already been stated. The complaint does not allege that the contract was disaffirmed, and there is no evidence of a disaffirmance. On the contrary, the complaint states a cause of action for deceit, and prays for damages therefor, and states no other cause of action, and, so far as the bringing of the action is notice, it is notice that the plaintiff would not waive the tort and rely upon the implied contract which would arise upon a disaffirmance, but would rely upon the tort and recover his damages resulting therefrom and affirm the contract. There is an entire absence of both allegation and proof of rescission. It is not claimed that the contract has been rescinded by the judgment of any court. Neither can it be contended that it has been rescinded by mutual consent, for the defendants have steadfastly insisted upon performance, and they tendered performance when performance was due. Neither can it be said that the plaintiff has rescinded by his own act; for to disaffirm a written contract "the law requires some positive act by the party who would rescind which shall manifest such intention and put the opposite party on his guard." Higby v. Whit-

taker, 8 Ohio, 198; Walters v. Miller, 10 Iowa, 427; Melton v. Smith, 65 Mo. 315. "A contract for the conveyance of real estate cannot be rescinded by the vendee without the performance of some act which will give the vendor notice of his intention and put him upon his guard." Mullin v. Bloomer, 11 Iowa, 360. See, also, American Wine Co. v. Brasher (C. C.) 13 Fed. 595, 603; Carney v. Newberry, 24 Ill. 203; Gaty v. Sack, 19 Mo. App. 470; Davis v. Read (C. C.) 37 Fed. 418, 424; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; Ayres v. Mitchell, 3 Smedes & M. 683; Lawrence v. Dale, 3 John. Ch. 23. And as a condition to a recovery of the consideration paid by a defrauded vendee, as upon a disaffirmance, he "must demand the money he has paid or the property he has delivered to such other party before suit brought in order to recover the same." Weeks v. Robie, 42 N. H. 316; Swazey v. Choate Mfg. Co., 48 N. H. 200; Corse & Co. v. Minnesota Grain Co. (Minn.) 102 N. W. 728, and cases cited. And it is necessary, in an action to recover payments upon a contract obtained by fraud, to "aver facts showing a rescission of the contract of purchase. * * * Until the contract is rescinded in some manner, an action to recover such payment cannot be maintained." Herman v. Gray, 79 Wis. 182, 48 N. W. 113. "An action at law to recover back that which has been paid upon a contract void for fraud supposes a precedent rescission of the contract by the act of the plaintiff." Ludington v. Patton, 111 Wis. 208, 86 N. W. 571; Potter v. Taggart, 54 Wis. 395, 400, 11 N. W. 678; Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705.

Some courts have held that a vendor of personal property, when the sale has been induced by fraud, may sue in replevin or trover, without previous notice, tender or demand, treating the acceptance of the property by the fraudulent vendee as a tortious taking and upon the ground that no title passes. Thurston v. Blanchard (Mass.) 22 Pick. 18, 33 Am. Dec. 700; Wood v. Garland, 58 N. H. 154, and Carl v. McGonigal (Mich.) 25 N. W. 516, are of this class. Other courts hold in such cases that the title passes, and that a rescission is essential before the defrauded vendor can reclaim the property. Farwell v. Hanchett (Ill.) 11 N. E. 875; Doane v. Lockwood (Ill). 4 N. E. 500. See, also, cases cited in note to Sisson Potter Co. v. Hill (R. I.) 21 L. R. A. 206. Whatever may be the correct rule as to a sale of personal property in-

duced by fraud, it is apparent that it does not apply to the case at bar. The sale in this case was of real estate. The action is not brought by a defrauded vendor of personal property, but by a purchaser of real estate, who alleges that he was fraudulently induced to make the contract of purchase to his damage. If it were possible to change the action from one ex delicto to recover damages to an action ex contractu as upon a rescission, still the situation would not be the same as in a sale of personal property; for this action is not brought by the vendor to recover personal property which he has sold. It was brought by the purchaser of real estate, and would in that event be brought, not to recover property sold, but to recover payments made upon a voidable contract. Under such circumstances it will be seen that the right of recovery is entirely dependent upon a precedent rescission, and so the cases hold.

Finally it is contended that, even if the theory upon which the plaintiff recovered was erroneous, the error could not be corrected upon defendants' motion. This conclusion is based upon the claim that the instructions given by the judge to the jury authorized the recovery which the plaintiff now seeks to sustain, and that the instructions were not excepted to by the defendants. The point urged is that the jury were authorized to apply an erroneous rule of law, which was not excepted to, and that under this erroneous rule the evidence is sufficient to sustain the verdict, and that the recovery must therefore stand. This contention cannot be sustained. The rule thus invoked has no application to this case, and for the reason that the jury did not return a general verdict. It will be seen, by reference to the statements of the proceedings above set out, that the law of the case was not applied by the jury, but by the trial judge. The damage and the amount thereof were awarded, not by the jury, but by the trial judge, after the jury was discharged and after a review of the special findings. Upon this state of facts the trial court "is free to consider and should consider what the law is, and is not bound by its instructions previously given to the jury. It is true a jury must take instructions as to the law, whether right or wrong; * * * but the court does not instruct itself and does not bind itself." Baird v. C., R. I. & P. Ry. Co., 61 Iowa, 359, 31 N. W. 733. That the verdict is not a general verdict is apparent, for it does not pass upon all of the issues. It wholly omits the vital issue, the amount of dam-

ages sustained by the plaintiff. Section 5446, Rev. Codes 1899, provides that, "when a verdict is found for the plaintiff in an action for the recovery of money, * * * the jury must also find the amount of the recovery." The jury found no amount. It is silent upon this issue. "A verdict in an action in which a money judgment is sought, whether by way of liquidated or unliquidated damages, which does not state specifically the amount to which the jury deem the plaintiff entitled, is not a verdict on which a valid judgment can be entered." Van Benthuysen v. DeWitt (N. Y.) 4 Johns. 213; Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Gerhab v. White, 40 N. J. Law, 242; Gaither v. Wilmer, 71 Md. 361, 18 Atl. 590, 5 L. R. A. 756, 17 Am. St. Rep. 542; L. & N. Ry. Co. v. Hartwell, 99 Ky. 436, 36 S. W. 183, 38 S. W. 1041; Bartle v. Plane, 68 Iowa, 227, 26 N. W. 88; Fryberger v. Carney, 26 Minn. 84, 1 N. W. 807; Mayor v. Calhoun, 103 Ga. 675, 30 S. E. 434; Watson v. Damon, 54 Cal. 278; Taylor v. Hathaway, 29 Ark. 597; Abbott's Trial Brief, 515; 28 Am. & Eng. Enc. Law, 303, 307, and cases cited. And in this case the omission is fatal, and cannot be supplied by reference to the pleadings.

It is also equally essential that the jury shall assess the damages in a special verdict. "A special verdict should leave to the decision of the court only questions of law." Morrison v. Lee, 13 N. D. —, 102 N. W. 223; Wainright v. Burroughs, 1 Ind. App. 393; 27 N. E. 591; Mitchell v. Geisendorff, 44 Ind. 358; Dawson v. Shirk, 102 Ind. 184, 1 N. E. 292; City of Ft. Wayne v. Durnell, 13 Ind. App. 669, 42 N. E. 242; Cole v. Powell, 17 Ind. App. 438, 46 N. E. 1006. In this case the special findings do not cover all of the issues and are not equivalent to a special verdict. Whether, if the verdict had been general, it would have been necessary to except to the instruction stating an improper rule of damages, the motion being upon the court's minutes, in order to set aside the verdict upon the ground that the amount awarded was excessive and unauthorized, we need not determine. On this point see Baylie's New Trials and Appeals, 545, 546, and cases cited.

Aside from the merits, the order must be affirmed for another reason. The record presents a case of mistrial. The jury did not return a general verdict, and the special findings do not cover all of the issues so that they can be treated as a special verdict. The jury found that the defendants made a false statement, that the plaintiff relied upon it as one of the inducements to enter into the

contract to purchase the land, that the value of the goods delivered upon the contract was $10,000, and that the plaintiff should have interest on his damages. There is entire silence as to the amount of damages, or as to whether the plaintiff suffered any damages. The fact that the defendant delivered $10,000 worth of goods as payment upon the contract merely establishes the fact that he made a payment of property of that value upon the contract. It does not show that he was damaged in that sum, or in any other sum, by so doing. The question of damages would turn upon the question of whether the obligation of the defendants to convey the title was of any value, and whether it failed in whole or in part. The answer alleged full performance, and the evidence established it without dispute. The special findings wholly ignored this issue, and, like the so-called general verdict, did not find that the plaintiff had been damaged in any sum. "It is a mistrial where, no general verdict being returned, the answers of the jury to specific questions do not cover the whole case like a special verdict." Manning v. Monaghan, 23 N. Y. 539. "And until all the issues of fact are decided no final judgment can be entered." Kiel v. Reay, 50 Cal. 61; Kintz v. McNeal, 1 Denio, 436; Chamberlain v. Dempsey (N. Y.) 14 Abb. Prac. 241; Fisk v. Henarie (C. C.) 32 Fed. 417, 427.

The order appealed from should be affirmed, and it is so ordered.

MORGAN, C. J., concurs. ENGERUD, J., having been of counsel in the court below, did not sit in the above case; HON. C. J. FISK, Judge of the First Judicial District, sitting by request.

FISK, District Judge. I am unable to concur in the foregoing opinion. It seems to me that the same is the result of a misapplication of well-settled legal principles. I do not question the soundness of most of the propositions advanced in said opinion. They are well settled, and no one can question their soundness. These propositions are, briefly stated, as follows: (1) Fraud without injury is not actionable, and hence damages must be shown in order to sustain an action for deceit. (2) A court of equity will not rescind a contract induced by fraudulent representations, in the absence of a showing of damage or injury. (3) A contract procured by fraud is not void, but merely voidable. (4) A person defrauded has an election to disaffirm or rescind the contract and recover back what he has parted with or its value, or he may affirm the contract, take such benefits as are obtainable under it, and re-

cover damages for the injury sustained by reason of the false statement. These remedies are inconsistent, and an election to pursue either remedy includes the exercise of the other. Such election must be exercised promptly upon discovering the fraud, and, when once made, it is final. (5) Except in cases of manifest abuse of discretion, a court of review will not disturb an order of the trial court granting a new trial upon the ground of insufficiency of the evidence to sustain the verdict. (6) A verdict must respond to the issues, and the jury must assess the damages, whether the verdict is a general or a special one, and a special verdict should leave to the court only questions of law. I maintain that these well-settled principles have no proper application in the disposition of this appeal.

I disagree with the majority opinion as to the nature and effect of this action, and also as to how, under the facts, plaintiff could assert his election to affirm or disaffirm the contract. The facts as disclosed by the evidence and as settled by the jury, or alleged in the complaint and admitted in the answer, are, briefly: That on September 30, 1902, the plaintiff entered into a written contract with the defendants, whereby the plaintiff made application to purchase certain real property described in the complaint for the consideration of $25,920; $500 was paid in cash, $2,000 was paid on October 7th, and on October 8th a stock of merchandise was turned over to defendants in part payment for said land. Such sale was to be consummated on January 1st following by the payment of the balance of the consideration and the delivery of title deeds to the plaintiff. In the negotiations leading up to and preceding the making of this contract defendants falsely and fraudulently represented to plaintiff that they were the owners of the land and legally entitled to enter into a contract to convey the same to plaintiff; that such representations were made to deceive and defraud him; that, relying thereon, he was induced to make the contract and the payments aforesaid, which payments in the aggregate, including the merchandise, amounted to $12,857.33; that defendants did not own said land, and had no right or authority to make the contract aforesaid. Subsequently plaintiff learned that said representations were unqualifiedly false, and he immediately, and on November 26, 1902, without notifying defendants of his intention to rescind, and without demanding a return of the money and personal property, commenced this action, and caused a writ of attachment to be issued therein and levied upon the personal property of the defendants. The com-

plaint sets forth the fact that said contract was entered into in reliance upon such false representations, and that said cash and stock were turned over in reliance upon the same; that said representations were false, and known to be false by the defendants at the time they were made; and that the plaintiff was thereby damaged in the said sum of $12,857.33. The complaint contains no averment of an election to rescind the contract, nor does it allege that a previous demand for the return of said money and personal property was made, nor does it allege a conversion of said money and personal property. It does, however, allege that the plaintiff was damaged in the sum of $12,857.33, being the exact sum parted with by the plaintiff under said contract, and prayed judgment for this sum, with interest. The defendants did not challenge the sufficiency of the complaint as stating a cause of action for the damages claimed. The entire range of proof, offered by plaintiff and received without objection by defendants, as well as the amount of damages demanded in the prayer for relief, unmistakably indicated, both to opposing counsel and the court, that plaintiff was seeking to recover the value of the goods and the money which he had delivered to defendants pursuant to said contract. Under no possible theory could such recovery be had, except the single one that plaintiff had rescinded the contract on account of the fraud inducing it, and that thereby he was entitled to recover as damages the value of what had been wrongfully obtained from him and converted by defendants.

The majority opinion proceeds upon the theory that this is an action to recover damages for deceit, and therefore an affirmance of the contract. The complete answer to this contention is the fact that no such cause of action existed on the date this action was commenced. The contract was not to be fully performed until the following January, and hence, in the nature of things, no damage had accrued for deceit at the date this action was commenced, and none would accrue until performance was due under the contract. There was no way of determining at that time whether or not defendants, on January 1st thereafter, would be able to make good their agreement to transfer title to the land, and hence no way of determining any damages on the theory that it is an action for fraud and deceit. If such theory is correct, the plaintiff is in the ridiculous attitude of asking for relief which, under the very facts alleged in the complaint, he is not entitled to, for the very apparent reason that no damage had accrued prior to the commencement of this action, and none

could, in the nature of things, accrue until several months thereafter. It is clear, therefore, to my mind, that the complaint not only does not state a cause of action for deceit, but it could not have been made to state such cause of action, as none existed, and the complaint was clearly demurrable as a complaint for damages for deceit. Plaintiff, by the fraud, was induced to part with property, and the object of the action clearly was, as it seems to me, not to ask for something which he clearly could not get—i. e., damages for deceit on the theory of an affirmance of the contract—but he was seeking to recover such an amount as would equal the value of what he had parted with on account of the fraud. He asks for this exact sum to a cent. The plaintiff had the undoubted right to take the position that defendants wrongfully, through the fraud and deceit, obtained his property and converted it to their own use, and it is apparent to my mind that this was the plaintiff's attitude in bringing this action. The action was similar to that of Thurston v. Blanchard, 22 Pick. 18, 33 Am. Dec. 700, which seems to be the ruling case, as the courts of many states have since its decision cited and followed it, and I find no court which has repudiated its soundness. It was an action of trover to recover the value of certain goods alleged to have been obtained by defendants from plaintiff by means of false and fraudulent representations. Shaw, C. J., said: "We are now to take it as proved in point of fact, to the satisfaction of the jury, that the goods for which this action of trover is brought were obtained from plaintiff by a sale, but that this sale was influenced and effected by false and fraudulent representations of the defendant. Such being the case, we think the plaintiffs were entitled to maintain their action without a previous demand. Such demand and refusal to deliver are evidence of conversion, when the possession of the defendant is not tortious; but, when the goods have been tortiously obtained, the fact is sufficient evidence of conversion. Such a sale, obtained under false and fraudulent representations, may be avoided by the vendor, and he may insist that no title passed to the vendee, and, in such case the seller may maintain replevin or trover for his goods." In Farwell v. Hanchet (Ill.) 11 N. E. 875, which was an action of replevin for goods obtained by fraud by a vendee, it was held: "It is well settled that, when goods have been obtained by fraud by a vendee, or otherwise unlawfully obtained, the vendor or true owner may, without previous demand, maintain trover or replevin for the goods

against any person not holding them as an innocent purchaser for value. The fraudulent vendee is not considered as a purchaser of the goods, but as a person who has tortiously got possession of them." To the same effect see Doane v. Lockwood (Ill.) 4 N. E. 501; Ryan v. Brant, 42 Ill. 78; Nichols v. Michael, 23 N. Y. 272, 80 Am. Dec. 259; Carl v. McGonigal (Mich.) 25 N. W. 516.

The majority opinion cites the case of Farwell v. Hanchett and Doane v. Lockwood, supra, as holding that a rescission is essential before the defrauded vendor can institute an action to reclaim the property; but I do not so understand these decisions. Both of said cases hold that, where the vendor has received the consideration for the sale, it is necessary, in order to effect a rescission, to restore the same to the fraudulent vendee, and that until such rescission is effected the title is in the fraudulent vendee. Where, however, nothing is necessary to be done by the vendor in order to place the fraudulent vendee in statu quo, the bringing of the suit is sufficient rescission. In the case of Oswego Starch Co. v. Lendrum (Iowa) 10 N. W. 900, 42 Am. Rep. 53, which was an action by a vendor to recover property parted with through fraud, it was contended by the defense that the plaintiff should allege and prove notice of rescission of the sale before the action was commenced. The court held otherwise, saying: "Counsel for defendant cite no case which holds a notice to be necessary. We know of no principle of law which requires it. We know that such a rule would practically defeat the remedy the law secures to vendors by recovering the property when the sale is induced by the fraud of the vendees. The thought is ridiculous that the the rule should be applied to 'lightning-rod men,' to the vendors of patent rights and patented articles, to those who travel over the state appointing agents for the sale of agricultural implements, 'hog cholera cure,' etc., and to other like adventurers. They are usually far beyond the reach of notices, or become invisible immediately after perpetrating their frauds. It would be quite as wise to require a thief to be notified that a warrant will be issued for his arrest as to require notice to swindlers before instituting proceedings to recover the property which they have acquired by their frauds." and they approvingly quote from the Supreme Court of Illinois the following language: "It could scarcely be insisted that if one to whom a horse had been loaned, instead of returning him according to contract, should attempt to run him from the country, and the first intelligence received

by the owner should be that he was actually absconding with his property, such owner would be bound, before he could properly secure a writ of replevin upon which to retake the same, to follow and overtake the wrongdoer and formally demand his property." The service of the summons and complaint upon defendants in this action, and the attachment levied on their property, was all the notice defendants were entitled to that plaintiff elected to rescind the contract. By this action defendants were advised that plaintiff claimed to recover of them the money and the value of the property which they had obtained from him. This could only be done upon the theory that the contract had been repudiated by plaintiff. Thompsonson v. Peck (Ind.) 18 N. E. 16, 1 L. R. A. 201; Laboyteaux v. Swigart (Ind.) N. E. 373; Smith v. Smith, 19 Ill. 351; Huey v. Grinnell, 50 Ill. 179; Thompson v. Fuller (Sup.) 16 N. Y. Supp. 486; State v. Davis (N. J.) 20 Atl. 1080. The notice of rescission need not be conveyed in express terms, but the intention to repudiate sufficiently appears where the party seeking to rescind institutes against the other legal proceedings based upon a disaffirmance of the contract. Plaintiff had a legal right to treat such taking of his property from him as a conversion thereof; and this, without any demand for possession prior to suit. Thurston v. Blanchard, 22, Pick 20, 33 Am. Dec. 700; Strayhorn v. Giles, 22 Ark. 517; Buffington v. Gerrish, 15 Mass. 156, 8 Am. Dec. 97; Waters v. Van Winkle, 3 N. J. Law, 567; Farwell v. Hanchett (Ill.) 11 N. E. 875; Weed v. Page, 7 Wis. 503; 14 Am. & Eng. Enc. Law, 165, and note; 24 Am. & Eng. Enc. Law, 645; Bigelow on Frauds, p. 77 et seq.

It is stated in the majority opinion that the doctrine announced in Thurston v. Blanchard and similar cases does not apply to the facts in this case for the reason that those were cases brought by the vendor of personal property, while it is stated that this involves the rights of a vendee of real property. I can discover no difference on principle. In both cases the plaintiff has been defrauded out of personal property, and it cannot possibly make any difference in the rule how such fraud was perpetrated. The defendants are in the position of fraudulent vendees of plaintiff's property. Whether they are vendees or not is wholly immaterial. The fact remains that they came into possession of plaintiff's property tortiously, and this is the essential basis upon which rests the said doctrine as announced in the foregoing authorities. If defendants,

as consideration for plaintiff's property, had agreed to pay cash on January 1st, instead of deeding lands to him, and had falsely stated that they had the cash deposited in a bank with which to make such payment, instead of falsely stating, as they did, that they had title to these lands, would not plaintiff's remedy be just the same? In Thompson v. Peck (Ind.) 18 N. E. 16, I L. R. A. 201, Mitchell, J., used this language: "It is well settled that, even though a sale of property be induced by fraud, the contract is not void but only voidable. The title to the property passes to the fraudulent vendee, subject to the right of the vendor, upon discovering the fraud, to elect whether he will rescind the contract by returning, or offering to return, whatever of value he may have received, and reclaim his property, or whether he will retain the consideration and treat the bargain as subsisting. Until the vendor makes his election, the contract continues, and the title to the property remains in the purchaser as against all the world. Where the possession of property has been wrongfully obtained by means of a voidable contract, and the vendor has received nothing of value, the bringing of an action to reclaim the property is, ordinarily, a sufficient disaffirmance of the contract."

The plaintiff's theory clearly is that it was an action to recover damages as for a conversion of the property parted with by him on account of the fraud, and with full knowledge of this theory the defendants tried the case to a finish in seeming acceptance of it, and the trial court instructed the jury in harmony with such theory, and I contend that after verdict rendered it is too late to challenge the correctness of such theory, even if the same was wrong, which I most emphatically deny. The plaintiff proved that the lands he contracted to purchase were not owned by the defendant at the time the contract was made. He also proved the other facts alleged in the complaint, and the value of the stock of merchandise transferred to defendants. The trial court fully instructed the jury upon plaintiff's theory of recovery, and, among other instructions, the jury were told: "If you find from the evidence that the defendants, or either of them, stated to the plaintiff that they were the owners of the land described in the contract, and the plaintiff believed and relied upon such statements, and was thereby induced to make the contract and to pay the money and deliver the goods, and you further find that such statements as to this title were false, then the plaintiff is entitled to a verdict." Also: "If you find that

the plaintiff was induced to make the contract and pay the money and deliver the goods by reason of and in reliance upon the statements or representations made by defendants that they were the owners of the land to be conveyed, the plaintiff had the right, upon discovering the falsity of such statements and representations, to declare the contract void and recover from defendants the damages suffered by him." And again: "If you find the issues of this case in favor of the defendant, the measure of his damages would be the actual detriment caused by the wrongful acts of defendants, and the cash value of the stock of merchandise at Ormsby which was delivered to defendants. In estimating the value of such stock, you are not bound by the inventoried price, nor by the receipt which was made on behalf of defendants when the same was turned over to them. You must ascertain what was the actual cash value of such stock at that time, and you cannot render a verdict for any larger sum than such actual cash value, together with the $2,500 cash payment." These instructions were clearly improper upon the theory that the action is one for deceit. Still they were not excepted to by defendants, and hence they must be accepted as applicable to the cause of action being tried.

The position taken in the majority opinion that the plaintiff did not by some affirmative act, other than bringing this action, rescind the contract prior to commencing the action, it seems to me, is erroneous. If plaintiff had received anything under the contract which it was his duty to return in order to place the defendants in statu quo, then such position would be sound; but he had received nothing under the contract, and therefore no duty rested upon him to do any act prior to commencing his action. The complaint sets forth sufficient facts to entitle plaintiff to recover the money and the value of the property obtained from him through the fraud and unlawfully converted by defendants to their own use, without the averment of facts showing a rescission, and without any allegation of a demand or refusal for the money and property before suit. The failure to set forth these facts did not render the complaint bad, in view of the fact that opposing counsel made no point as to the form of the action or the sufficiency of the complaint, but tried the case to a verdict upon the theory that the contract had been rescinded for the fraud, providing the false representations were in fact made, and that plaintiff's right was to recover what he had parted with through the fraud. In fact, the answer of

defendants shows that such a demand prior to suit would have been unavailing, and hence such a demand was unnecessary, even if otherwise required. The measure of damages claimed in the complaint, and which the court instructed the jury to give in case they found for the plaintiff, and the amount of the verdict, are all limited to the value of what the defendants obtained from plaintiff through the fraud—a measure of damage only applicable in a conversion case or in an action of assumpsit proceeding on the theory that the contract was void. "Where the demand for damages indicates that the plaintiff is proceeding for a measure of recovery adapted to only one form of action, it is strong evidence that the action is in that form, whether it be ex contractu or ex delicto." 21 Enc. Pl. & Pr. 660, and cases cited. And the theory of the trial is shown by the instructions to the jury, to which no exception was taken. 21 Enc. Pl. & Pr. 669; Peteler Ry. Co. v. Mfg. Co., 60 Minn. 127, 61 N. W. 1024; Davis v. Jacoby, 54 Minn. 144, 55 N. W. 908; Crawford v. Pyle (Pa.) 42 Atl. 687; Harper v. Morse (Mo.) 21 S. W. 517. Evidence was received in the case, without objection from defendants' counsel, showing that defendants had disposed of a large part of the Ormsby stock before this action was commenced. This evidence was competent, and only competent, as tending to show a conversion of the property, and no objection was made or exception taken to the instruction as to the measure of damage—a tacit consent by defendants to the case being tried and submitted on plaintiff's theory. Holman v. Land Co. (Colo. App.) 45 Pac. 519; Denver, etc., Ry. Co. v. Ditch Co. (Colo. App.) 52 Pac. 224. Counsel having tried the case upon such theory, and the court having instructed the jury in accordance therewith, and the complaint and evidence being amply sufficient to sustain the verdict upon this theory, defendants cannot, after being defeated upon the theory upon which they tried the case without objection, claim to set aside the recovery upon a point which was not raised on the trial. In determining the nature of this action, we are not restricted to the face of the complaint, as the court was upon the former appeal, because the parties, as well as the trial court, at the trial of the case upon the merits, most effectually put at rest any question there might have been as to the character of the action. They treated the case as an action to recover the $2,500 cash payment and the value of the stock of merchandise. If it had been tried upon the theory now contended for by the defend-

ants, and so held by the majority opinion, all the testimony relating to damages, or of the value of the stock of merchandise, would have been improper, and why? Because under such theory the contract was affirmed, and therefore in full force and effect, and the value of the merchandise and money paid under the contract would have had absolutely nothing to do with the extent of plaintiff's detriment caused by such fraud. But testimony was introduced, without objection, as to the value of the property parted with by plaintiff, and the value of such property at the time of its delivery, together with the cash paid, was accepted by all as the true measure of plaintiff's recovery. The trial court instructed the jury in harmony with this theory. Not an objection or exception was taken to any ruling or to any instruction, and I contend that after thus trying a case, and a verdict having been rendered, which is in conformity with the evidence and the law as given by the court, it is too late for defendants to challenge the correctness of the theory upon which the case was tried. Logan v. Freerks (recently decided by this court) 103 N. W. 426; Giffert v. West, 33 Wis. 622. In the latter case the language of Dixon, C. J., is pertinent: "It frequently happens, as was held in Neff v. Clute, 12 Barb. 466, that the same state of facts will support an action in either of two or more different forms, as in that case one for the original consideration, or one for the damage sustained by the fraud. But if, in such or a supposed similar case, the plaintiff fails to make the proofs, or is mistaken about the facts, and so does not establish his right in the form of action adopted, yet if he is permitted to proceed with his evidence, and, without objection, to a verdict upon a good cause of action shown in some other form arising out of the facts set forth in the complaint, or the transaction complained of, no good reason is seen why said verdict should be set aside or the judgment arrested."

Defendants centered their defense upon a denial of the representations alleged and in an endeavor to show that on January 1st and on the date of the trial they were able to furnish title to plaintiff of the land in question. Their testimony upon the latter question was wholly immaterial. The contract was null and void on account of plaintiff's election to treat it so by bringing the action, and nothing which defendants could or did do thereafter towards getting title could be of any concern to plaintiff. It cannot be doubted that the representations as to defendants' ownership

of the land were material false representations. Defendants knew they were false, and made them for the purpose of inducing plaintiff to enter into the contract of purchase. Defendants were strangers to the plaintiff. The deal which was negotiated contemplated his paying in cash and merchandise nearly $13,000 to them ninety days before he could get anything in return. Plaintiff had no security for the payments made, excepting the naked promise of defendants to transfer him the land, unless the defendants owned the lands they contracted to sell him, in which event he would have the security of the land itself. No sane man would make such a contract unless he had been led to believe that the other party to the contract owned the land or was in every way solvent. That this fraud of defendants would vitiate and annul the contract at plaintiff's election is clear, and it was not necessary that he should wait until January 1st, when full performance was due under the contract, before bringing his action, nor that he should have suffered any pecuniary damages before exercising the right of rescission. In Williams v. Kerr, 152 Pa. 565, 25 Atl. 618, 619, it is said: "It is such injury as will be redressed to obtain from an owner, by a false representation of a fact which he deems material, property which he would not otherwise have parted with upon the terms which he was thus induced to accept." In Stewart v. Lester, 49 Hun, 63, 1 N. Y. Supp. 700, it is said: "Either party to a contract may make a collateral statement made by the other party during the negotiations as to the existence or nonexistence of a particular fact, a material one in his judgment, so, if it turns out to be untrue, · and was falsely and fraudulently made, it will vitiate the contract, if he relied upon the same as true, and would not have entered into the contract but for the statement." To the same effect are Valton v. Insurance Co., 20 N. Y. 32; Kelly v. Railway Co., 74 Cal. 557, 16 Pac. 386, 5 Am. St. Rep. 470; McLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Harlow v. La Brum, 151 N. Y. 278, 45 N. E. 859; Id., 82 Hun. 292, 31 N. Y. Supp. 487; 2 Warvelle on Vendors, 752. A false statement as to title and ownership of land is such fraud as will entitle the party deceived to rescind. Watson v. Atwood, 25 Conn. 313; Singleton v. Houston (Tex. Civ. App.) 79 S. W. 98; Slingluff v. Dugan (Md.) 56 Atl. 837; Claggett v. Crall, 12 Kan. 393. So, by statute in this case, a party to a contract may rescind the same when his assent was given by mistake or produced through fraud of the opposite party. Section 3932,

Rev. Codes 1899.  Mistake of fact may consist in the belief in the present existence of a thing material to the contract which does not exist.  Section 3853, Rev. Codes 1899.  Actual fraud consists in the suggestion as a fact of that which is not true, made by a party to the contract who does not believe it to be true, and with intent to deceive another party thereto or to induce him to enter into the contract.  Section 3848, Rev. Codes 1899.

In the majority opinion numerous cases are collated upon the proposition that no relief can be had for fraud in the absence of proof of damage or injury.  I do not challenge the correctness of this doctrine, but I do assert that no court has gone to the extent of denying the right of rescission under the facts in this case. None of the authorities hold that it is necessary to show actual pecuniary damage.  In 14 Am. & Eng. Enc. Law, pp. 139, 140, the correct rule is asserted as follows: "A suit cannot be maintained·for equitable relief by way of rescission or cancellation of a contract on the ground of fraud, unless it is shown that damage or prejudice has resulted therefrom.  If any damage or prejudice is shown, however slight, the party is entitled to relief.  Pecuniary damage is not necessary to entitle a person to relief by way of rescission; but it is enough for him to show that he has been induced by material false and fraudulent representations to enter into a contract which he would not have entered into but for such representations."  In McLaren v. Cochran, 44 Minn. 255, 46 N. W. 408, it is said: "If a party is induced to enter into a contract by fraudulent representations as to a fact which he deems material, and upon which he has a right to rely, he may rescind the contract upon discovery of the fraud, and the party in the wrong should not be heard to say that no real injury can result from the facts misrepresented."  The majority opinion reads: "It stands undisputed in this case that the defendants were prepared to convey, and offered to convey, the land when performance was due under the contract.  Plaintiff is thus tendered the full fruit of his bargain in accordance with the terms of his contract of purchase.  The false representation was, therefore, without injury or damage; for there has been no failure of title, and no other cause for avoiding the contract is alleged, or even suggested."  I think the foregoing is clearly unsound.  Of course, in order for fraud to be actionable in an action for deceit, there must have been injury or damage; but this is not an action for deceit.  It is an action, as I said before, based upon a rescis-

sion of the contract. Under the conceded facts in this case, can it be seriously contended that, upon discovering the fraud, it was not plaintiff's right to at once disaffirm the contract and bring suit, as he did, to recover back his payments? It would be a strange rule to require plaintiff to delay bringing his action, yet this is the inevitable effect of such holding. If he had a right to rescind upon discovering the fraud, then his action in so doing would put an end to the contract, and defendants could thereafter assert no rights under it. The correct rule is that, if a person induces another to enter into a contract by fraudulent representations or concealment, he cannot defeat the other's right to rescind by offering to make his representations good. For fraud avoids the contract ab initio, and the party committing it can take no advantage of it, and acquires no right or interest by means thereof. 14 Am. & Eng. Enc. Law, p. 158. The logic of the doctrine announced in the majority opinion leads to this absurd result, as stated by appellant's counsel, that, inasmuch as defendants had, after the fraud was discovered and after the contract was rescinded and this action commenced, placed themselves in a position to complete the title, therefore Sonnesyn suffered only nominal damages, and must for that reason be defeated in this action. It also leads to the result that the contract, notwithstanding the fraud and the rescission consequent upon such fraud, remained in full force until January 1, 1903; and this leads to the further result that fraud does not vitiate a contract or give right of rescission; and, finally, if this is true, then the complaint does not state a cause of action.

Plaintiff did not discover that defendants were not the owners of the land until just before the commencement of this action on November 26th. As I said before, plaintiff had nothing to restore to defendants in order to place them in statu quo. He did not attempt a rescission of the contract by consent, and, from plaintiff's standpoint, he could not be expected to do so. Defendants had failed to furnish him the abstracts of title as stipulated in the contract, although assured when he made the contract that Akin had them at home and it would take only a few days to have them ready. Plaintiff at the time of transmitting the $2,000 cash payment, on October 7th, asked for his abstracts, and again he wrote, before October 19th, requesting them. No answer was made to these letters. On October 20th he demanded to know why they had not been delivered, and was told that Akin had them at home.

On October 21st he again asked to have them sent him at once, and was promised by Babcock that he would be at plaintiff's home town in Minnesota with the abstracts when plaintiff got there. He did not come, and the abstracts were not furnished at all. Plaintiff's suspicions becoming excited, after investigation he ascertained that defendants owned none of the lands that they had contracted to sell him, but that, immediately after taking his Ormsby stock and while keeping from him the information the abstracts would have supplied, a large part of the stock had been sold and delivered by defendants to good faith purchasers. Fair dealing did not require of plaintiff, under these circumstances, that he attempt a rescission by consent with persons who had been false to him in so many particulars.

The majority opinion is based upon the theory that this action is for deceit, and hence is an affirmance of the contract, instead of a disaffirmance thereof. I contend that, even so, the verdict cannot be disturbed, and for the very apparent reason that said verdict was arrived at under a rule for measuring damages laid down by the trial court and acquiesced in by defendants' counsel, and. whether right or wrong, is immaterial, as the correctness of such rule was not and is not challenged, and it became the law of the case, the same as though the parties had expressly stipulated thereto. Evidence was introduced upon this theory of the measure of damage, and upon none other, and I insist that after verdict rendered it is too late for defendants to challenge the correctness of such rule of damage. Even if defendants had laid a proper foundation for attacking the correctness of such rule, by excepting to the instruction embodying the same, still it would not avail them, as they cannot, after verdict rendered, change the theory pursued by all during the trial without objection. But defendants are not attacking the correctness of the rule by which the jury was bound in fixing the damages, but they attack the verdict for insufficiency of the evidence, and I maintain that under this ground defendants cannot be heard to say that the rule of law by which the verdict was determined was erroneous. They cannot do indirectly what they could not do directly. In determining whether the evidence is sufficient to sustain the verdict, the evidence will be considered in the light of the instructions actually given, and not in the light of instructions which should have been given. In other words, the instructions given must, when not at-

tacked directly, be deemed conclusively to state the law correctly. See Bergh v. Sloan (Minn.) 54 N. W. 943, and numerous cases cited, which is squarely in point. The court says: "The appellant contends that the evidence did not support the plaintiff's claims as to the nature of the agreement. In this the appellant cannot be sustained. The evidence fully and beyond any reasoable question justified the verdict in favor of the plaintiff so far as concerned the facts in issue. But it is said that the agreement, even according to plaintiff's proof of it, did not constitute a partnership agreement, and was void under the statute of frauds. This point is not available to the appellant. The court instructed the jury, in substance, that if the agreement was as claimed by the plaintiff, and if the property was purchased in accordance therewith, and the purchase price advanced by the plaintiff, * * * the plaintiff would be entitled to recover. No exception was taken to this as being the law of the case by which the jury should be guided in the discharge of their duties. The appellant must be deemed to have acquiesced in this statement of the law as applied to the case. The verdict was rightly founded upon that proposition, and a contrary theory of the case cannot now be advanced as a reason for avoiding the result of the trial." See, also, Davis v. Jacoby, 5 Minn. 144, 55 N. W. 908; Peteler, etc., Co. v. Manufacturing Co., 60 Minn. 127, 61 N. W. 1024.

It is not contended that the evidence is not amply sufficient to sustain the verdict, when tested in the light of the rule of damage announced in the instructions to the jury; but it is asserted in the majority opinion that the rule thus invoked has no application to this case, for the reason that the jury did not return a general verdict. Said opinion states that the damage and the amount thereof were awarded, not by the jury, but by the trial judge, and that therefore the court is free to consider, and should consider, what the law is, and is not bound by its instructions previously given to the jury; and, finally, it is asserted in the majority opinion that the record presents a case of mistrial on account of the defective verdict. This holding is, I think, based upon an erroneous premise. The verdict, while irregular, was not a nullity, and it responded to all the issues. It is not a special verdict, but a general one with special findings, and, while the general verdict is irregular in not assessing the damage, it is clearly, in my opinion, sufficient when aided by the special findings. It was admitted in

the answer that plaintiff parted with $2,500 in cash and the stock of merchandise. Under the special findings the jury found the value of the stock of merchandise to be $10,000, and under the instruction of the court the damage would be $12,500, with interest, and it was a mere matter of computing the interest to determine the amount of plaintiff's recovery under the law as laid down by the trial court. In English v. Goodman, 3 N. D. 129, 54 N. W. 540, this court held it not prejudicial error for the court to order judgment under a verdict omitting to assess damages, where the amount of the damage was admitted in the answer. The court said: "The trial court would have been fully warranted in instructing the jury that, in case they found the plaintiff entitled to recover, they should fix the amount of his recovery at $50, or the court might, upon the return of the verdict, have ordered it amended in that respect. Under these circumstances the court might well treat the verdict as amended and order judgment. Such action in no manner prejudiced appellants. To put these parties to the expense of a new trial for so harmless an irregularity would be a reflection either upon legislation or judicial wisdom." In the case at bar the court instructed the jury that, if they found for the plaintiff, the damages would be the value of the stock of merchandise, together with the $2,500 cash payment, with or without interest. The jury in the special findings found the value of the stock of merchandise, and found that interest should be allowed; hence, as I said before, all that remained was to compute the interest. Of course, were it not for the special findings, the general verdict would fail, as the damages were unliquidated to the extent of the value of the merchandise. In Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559, a similar verdict was sustained; the court saying: "In such a case of absolutely uncontradicted facts, where a certain, definite, conceded amount follows a verdict for the plaintiff as certainly as the night follows the day, it seems to me a mere travesty or mockery of justice to hold that no legal verdict has been arrived at, that the court is powerless to aid, and that the plaintiff must lose the benefit of the trial and the verdict actually agreed upon, and both parties must be put to the expense of proceeding de novo to a trial of the cause." Furthermore, the question of the sufficiency of the verdict was not raised or suggested by counsel either in the trial court or in this court, and hence it ought not at this time to be noticed.

The rule invoked in the majority opinion that, where a verdict is vacated and a new trial granted by the trial court upon the ground of insufficient evidence, the court in so doing is acting within its judicial discretion, and such discretion will not be disturbed, except in case of manifest abuse, has no application in this case. The order granting a new trial was not based upon this ground, and, furthermore, the evidence upon the theory upon which the case was tried, the correctness of which theory was not challenged, is concededly amply sufficient to sustain the verdict.

For the foregoing reasons, I firmly believe that the order appealed from should be reversed.